# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re: | Chapter 7 |
| Jonathon L. Razo, | Case No. 21-20154-dob |
| Debtor. | Hon. Daniel S. Opperman |

Northstar Bank,

     Plaintiff,                          Adv. Pro. No. 21-02015-dob

v.

Jonathon L. Razo,

     Defendant.

_____/

## DEFENDANT'S RENEWED MOTION TO DISMISS
## OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Jonathon L. Razo, ("Defendant") through his counsel, Wolfson Bolton

PLLC, hereby moves the Court, pursuant to Federal Rules of Civil

Procedure 8(a), 9(b), 12(b)(1), 12(b)(6), and 56(a), made applicable in this

adversary proceeding by Federal Rules of Bankruptcy Procedure 7008,

7009, 7012(b), and 7056, for an order dismissing, or in the alternative,

granting summary judgment in his favor for all counts contained in the

Amended Adversary Complaint (Docket # 26) filed by Northstar Bank,

("Plaintiff").

{00109535.DOCX }

1

The legal and factual basis for the relief sought herein is set forth in the *Brief in Support of Defendant's Renewed Motion to Dismiss or in the Alternative Motion for Summary Judgment* (the "<u>Motion</u>") filed as **Exhibit 3** herewith.

Concurrence for the relief sought was requested pursuant to LBR 9014-1(h) on October 1, 2021, but was not granted.

WHEREFORE, Defendant respectfully requests the Court (1) to enter the proposed order filed herewith as **Exhibit 1** granting Defendant's Motion and dismissing this adversary proceeding in its entirety with prejudice and (2) to grant Defendant such other and further relief as the Court deems just and proper.

Dated: October 1, 2021                     Respectfully submitted,

                                           WOLFSON BOLTON PLLC

                                           By:___/s/ Michelle H. Bass_____
                                                Michelle H. Bass (P71358)
                                           3150 Livernois, Suite 275
                                           Troy, MI 48083
                                           Telephone: (248) 247-7070
                                           <u>mbass@wolfsonbolton.com</u>

                                           Counsel to Jonathon L. Razo

# EXHIBIT 1

{00109535.DOCX }

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

In re:                                          Chapter 7

Jonathon L. Razo,                               Case No. 21-20154-dob

                              Debtor.           Hon. Daniel S. Opperman

_____

Northstar Bank,

        Plaintiff,                              Adv. Pro. No. 21-02015-dob

v.

Jonathon L. Razo,

        Defendant.

_____/

## [PROPOSED] ORDER DISMISSING ADVERSARY PROCEEDING

This matter having come before the Court upon *Defendant's Renewed Motion to Dismiss or in the Alternative Motion for Summary Judgment* (the "Motion"); and the Court finding good cause for the entry of this Order;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      The Motion is granted.

2.      The above captioned adversary proceeding is hereby dismissed pursuant to Fed. R. Bank. P. 7008, 7009, 7012(b), and/or 7056,

{00109535.DOCX }

and Fed. R. Civ. P. 8(a), 9(b), 12(b)(1), 12(b)(6), and/or 56(a).

    3.    This adversary proceeding is dismissed in its entirety with

prejudice.

# EXHIBIT 2

{00109535.DOCX }

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

In re:

Jonathon L. Razo,

Debtor.

Chapter 7

Case No. 21-20154-dob

Hon. Daniel S. Opperman

_____

Northstar Bank,

     Plaintiff,

v.

Jonathon L. Razo,

     Defendant.

_____/

Adv. Pro. No. 21-02015-dob

## NOTICE OF DEFENDANT'S RENEWED MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT <u>AND OPPORTUNITY TO OBJECT</u>

     Defendant Jonathon L. Razo, through his counsel, Wolfson Bolton PLLC, has filed *Defendant's Renewed Motion to Dismiss or in the Alternative Motion for Summary Judgment* (the "<u>Motion</u>").

     **<u>Your rights may be affected.</u>  You should read these papers carefully and discuss them with your attorney, if you have one in this adversary proceeding.  (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to grant the relief sought in the Motion, or if you want the Court to consider your views on the Motion, with 14 days, you or your attorney must:

1.  File with the Court a written response or answer, explaining your position at:[1]

    **Clerk - United States Bankruptcy Court**
    **Eastern District of Michigan**
    111 First Street
    Bay City, MI 48707

    If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it on before the date stated above.  All attorneys are required to file pleadings electronically.

    You must also send a copy to:

    Michelle Bass
    Wolfson Bolton PLLC
    3150 Livernois, Suite 275
    Troy, MI 48083
    mbass@wolfsonbolton.com

2.  If a response or answer is timely filed and served, the Clerk of the Court will schedule a hearing on the Motion, and you will be served with a notice of the date, time and location of the hearing.

---

[1] Response or answer must comply with Fed. R. Civ. P. 8(b), (c) and (e).

{00109535.DOCX }

**If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief.**

Dated: October 1, 2021

Respectfully submitted,

WOLFSON BOLTON PLLC

By: /s/ Michelle H. Bass
    Michelle H. Bass (P71358)
3150 Livernois, Suite 275
Troy, MI 48083
Telephone: (248) 247-7070
mbass@wolfsonbolton.com

Counsel to Jonathon L. Razo

# EXHIBIT 3

{00109535.DOCX }

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

In re: | Chapter 7

Jonathon L. Razo, | Case No. 21-20154-dob

Debtor. | Hon. Daniel S. Opperman

_____

Northstar Bank,

Plaintiff, | Adv. Pro. No. 21-02015-dob

v.

Jonathon L. Razo,

Defendant.

_____/

## BRIEF IN SUPPORT OF DEFENDANT'S RENEWED MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT AND OPPORTUNITY TO OBJECT

Jonathon L. Razo, ("Defendant") through his counsel, Wolfson Bolton PLLC, in support of *Defendant's Renewed Motion to Dismiss or in the Alternative Motion for Summary Judgment* (the "Motion"), states:

## INTRODUCTION

In this adversary proceeding, Northstar Bank ("Plaintiff") seeks a determination that the debt owed to Plaintiff by Defendant is non-dischargeable under 11 U.S.C. § 523(a)(6). Defendant seeks dismissal of the instant matter pursuant to and in reliance upon Fed. Civ. P. 8(a), 9(b),

12(b)(1), 12(b)(6), and 56(a)[2]. The Court may and should dismiss Plaintiff's adversary proceeding or grant the Defendant summary judgment in his favor for lack of subject matter jurisdiction and failure to state a claim based on the proper applications of res judicata, collateral estoppel and judicial estoppel.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, however Defendant asserts that the Court lacks subject matter jurisdiction to hear this claim, and that dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is proper. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. Although this is a core proceeding, the Defendant consents to entry of a final order or judgment by the Bankruptcy Court in this matter pursuant to Fed. R. Bankr. P. 7012(b).

## FACTS

Defendant executed a promissory note ("Note 1") and a security agreement ("Security Agreement 1") both dated October 13, 2016, in his individual capacity in favor of Plaintiff in the face amount of $100,000.00.

---

[2] All references made to the Federal Rules of Civil Procedure are made applicable in adversary proceedings pursuant to the corresponding Federal Rules of Bankruptcy Procedure.

Note 1 and Security Agreement 1 are attached to Plaintiff's amended

adversary complaint as Exhibits 2 and 4 respectively. Defendant Jonathon

L Razo is listed as the sole borrower under the note. Note 1 includes a

provision titled 'COLLATERAL' which states the following:

> "Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: inventory, chattel paper, accounts, equipment and general intangibles described in a Commercial Security Agreement dated October 12, 2016."
>
> (Adv. Pro. No. 21-02015-dob, Docket No. 26, Pg. 13).

There is no reference in Note 1 as to any business entity, whether

incorporated or unincorporated. Security Agreement 1 lists Jonathon L

Razo as the sole grantor under the agreement. Security Agreement 1

includes a provision titled 'COLLATERAL DESCRIPTION' which states the

following:

> "The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the indebtedness and performance of all other obligations under the Note and this Agreement: All Assets, Inventory, Chattel Paper, Accounts, Equipment and General Intangibles." (Adv. Pro. No. 21-02015-dob, Docket No. 26, Pg. 21).

Security Agreement 1 also includes a section titled: 'DEFINITIONS' which

states in relevant part:

> "Collateral. The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral

Description section of this Agreement….Property. The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement. *Id.* at 24.

There is no reference in Security Agreement 1 as to any business entity, whether incorporated or unincorporated.

Defendant executed three subsequent 'change in terms agreements' relating to Note 1, extending the time to repay the note on three separate occasions. The first change in terms agreement also increased the principal of the note from $100,000.00 to $125,000.00. The change in terms agreements regarding Note 1 are dated November 15, 2017, December 6, 2018, and February 26, 2019, respectively. The change in terms agreements are attached to Plaintiff's first amended adversary complaint as Exhibits 6, 9 and 11, respectively. The first change in terms agreement dated November 15, 2017, also references additional collateral by way of a new security agreement ("Security Agreement 2") attached to Plaintiff's adversary complaint as Exhibit 7.

On November 15, 2017, Defendant simultaneously executed a second promissory note ("Note 2") secured by Security Agreement 2, evincing a new line of credit in the amount of $15,000.00. Note 2 is attached to Plaintiff's adversary complaint as Exhibit 14. Security Agreement 2 lists the following collateral for purposes of securing Note 2,

also referencing Note 1 as security for the increased principal balance: "All Assets, Inventory, Chattel Paper, Accounts, Equipment, General Intangibles and Fixtures; including but not limited to Tool Box serial #6391205A, Tools & Plow serial #BC022827." (Adv. Pro. No. 21-02015-dob, Docket No. 26, Pg. 33). Security Agreement 2 and the collateral thereunder was thus pledged as security not only for the new line of credit made by the Plaintiff under Note 2, but also pledged as security for Note 1, including the principal increase. The aforementioned documents are executed by the Defendant in his personal capacity. The Defendant is the only obligor.

Plaintiff perfected Security Agreement 1 by filing a Uniform Commercial Code ("UCC") financing statement dated October 14, 2016, (the "Original Financing Statement") which is attached to Plaintiff's adversary complaint as part of Exhibit 17. As security for Note 1, Plaintiff's Original Financing Statement merely restates the 'Collateral' section contained in Security Agreement 1: "inventory, chattel paper, accounts, equipment and general intangibles described in a Commercial Security Agreement dated October 12, 2016." (Adv. Pro. No. 21-02015-dob, Docket No. 26, Pg. 21). Plaintiff perfected Security Agreement 2 by filing a second UCC financing statement, dated November 21, 2017, ("the Second

<u>Financing Statement</u>"). The Second Financing Statement lists collateral defined within the terms of Security Agreement 2, specifically, the tool box, tools and plow. (Adv. Pro. No. 21-02015-dob, Docket No. 26, Pg. 65).

Pursuant to the UCC search performed by Plaintiff, certified on July 5, 2020, Plaintiff filed one additional UCC financing statement in the form of a continuation of the Second Financing Statement. Plaintiff did not file any additional or other subsequent UCC financing statements to specify any other changes in collateral. *Id*. Aside from the increases to the two lines of credit under Notes 1 and 2, the addition of specific collateral (namely, the tool box, tools and plow), and modifications to the terms of repayment pursuant to the various Change in Terms Agreements, the fundamental obligations under the notes and security agreements executed by the parties did not change.

**Relevant Provisions Contained within the Loan Documents**

The security agreements contain a provision titled 'Removal of the Collateral' which provides: "Except in the ordinary course of Grantor's business, including the sale of inventory, Grantor shall not remove the Collateral from its existing location *without Lender's prior written consent*." (Adv. Pro. No. 21-02015-dob, Docket No. 26, Pg. 21, and Pg. 33, respectively).  (Emphasis added). The commercial security agreements

also contain a provision titled 'Transactions Involving Collateral' which

provides in part:

> "*Except for* inventory sold or accounts collected in the ordinary
> course of Grantor's business, *or as otherwise provided for in this
> Agreement*, Grantor shall not sell, offer to sell, or otherwise transfer
> or dispose of the Collateral…Grantor shall not pledge, mortgage,
> encumber, or otherwise permit the Collateral to be subject to any lien,
> security interest, encumbrance or charge, other than the security
> interest provided for in this Agreement, *without the prior written
> consent of Lender*…Unless waived by Lender, all proceeds from any
> disposition of the Collateral (for whatever reason) shall be held in
> trust for Lender and shall not be comingled with any other funds;
> provided however, this requirement shall not constitute consent by
> Lender to any sale or other disposition. Upon receipt, Grantor shall
> immediately deliver any such proceeds to Lender."

(Adv. Pro. No. 21- 02015-dob, Docket No. 26, Pg. 22, and Pg. 34,

respectively). (Emphasis added).

Finally, the commercial security agreements contain a relevant

provision titled 'Grantor's Right to Possession and to Collect Accounts,'

which provides the following:

> Until default and except as otherwise provided below with respect to
> accounts, *Grantor may have possession of the tangible personal
> property and beneficial use of all the Collateral and may use it in any
> lawful manner not inconsistent with this Agreement or the Related
> Documents*, provided that Grantor's right to possession and beneficial
> use shall not apply to any Collateral where possession of the
> Collateral by Lender is required by law to perfect Lender's security
> interest in such Collateral. Until otherwise notified by Lender, Grantor
> may collect any of the Collateral consisting of accounts. At any time
> and even though no Event of Default exists, Lender may exercise its
> right to collect the accounts and to notify account debtors to make
> payments directly to Lender for application to the indebtedness. *If*

*Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances…"*

(Adv. Pro. No. 21- 02015-dob, Docket No. 26, Pg. 22, and Pg. 34, respectively). (Emphasis added).

### Defendant's Breach of Contract, Denial of Willful and Malicious Conduct, and Affirmative Defenses

From the time that Note 1 was executed by the Defendant in late 2016, through late 2020, Defendant made the required quarterly monthly interest payments owing to Plaintiff under the two notes. The line of credit granted by Northstar Bank was maintained in an account, Account No. 80042559. Pursuant to the terms of the loan documents, from time to time, the Defendant would request advances on the line of credit. Thereafter, from time to time, Defendant deposited sale proceeds into the account, in accordance with the terms of the loan documents. All proceeds received from the sale or disposition of inventory as defined in the loan documents was routinely deposited into the account maintained at Northstar Bank. Therefore, 100% of the proceeds from the sale and disposition of all inventory was, unequivocally returned to Plaintiff. Defendant denies Plaintiff's allegation that he failed to turn over proceeds from the sale of

inventory to Plaintiff. As of May, 2019, the Defendant's line of credit account at Northstar Bank contained approximately $145,000, or, more than what was needed or required to pay off the entire amount of principal and interest on both Notes.

In May 2019, the Defendant began making investments in what he believed to be stock through an online company, 'Stock FX Pro.' The Defendant believed that he was working with real trading agents, who gave him the impression they would be teaching him how to make strategic online investments. The Defendant made initial investments of approximately $26,000 from his own personal finances in May 2019. The initial payments were made between May 20, 2019, and May 28, 2019. **(See Defendant's Exhibit 6-1; Personal Transfers).** The Defendant's own personal funds used to make these investments were derived from the operation of his former snow and lawn service. The Defendant never utilized funds in the Northstar Bank line of credit account to make the so-called 'investments,' for what he believed was the purchase of stock.

On June 8, 2019, the Defendant received e-mail correspondence from Stock FX Pro which indicated he was entitled to earnings of close to a million dollars as the result of his investments. **(See Defendant's Exhibit 6-2; Evidence of Investment Earnings).** The Defendant was further

informed by Stock FX Pro agents that due to investors having failed to pay tax on earnings in the past, the US Government required all investors to pay the tax on their earnings in full, prior to cashing out their dividends, and prior to release of the original investment. **(See Defendant's Exhibit 6-3; Correspondence Requesting Payment of Tax on Investment).**

It was further impressed upon Defendant in correspondence by Stock FX Pro that by paying the tax on his investment earnings in full up front, he would avoid sanctions by the government. In good faith, with just cause, in reliance upon these material misrepresentations made by supposed agents of Stock FX Pro, with no ill will or malice towards Northstar Bank, and with written disclosure made to the Plaintiff, the Defendant enlisted Plaintiff's assistance in sending additional sums of money to Stock FX Pro. Specifically, on or about June 25, 2019, the Defendant requested that Northstar Bank initiate wire transfers from the line of credit account to Stock FX Pro agents; one transfer in the amount of $99,000.00, and one in the amount of $45,000.00. **(See Defendant's Exhibit 6-4; Northstar Bank Wire Transfer).** Defendant made these requests to Plaintiff in writing. In response to these requests by Defendant, Plaintiff processed the transfers of funds from the line of credit account using the instructions provided by Defendant; instructions Defendant had received from the fraudulent actors

behind Stock FX Pro.

On June 25, 2019 and in the subsequent days that followed, the Defendant attempted to reach Stock FX Pro using all known contact information. The Defendant demanded the immediate release of his earnings, as well as the return of all wires sent to Stock FX Pro, or their agents. The Defendant threatened to post Stock FX Pro's actions on social media and broadcast the company's failures with the CNBC news network if his money was not returned as promised. The Defendant grew increasingly suspicious of the investment scheme, eventually filing a police report on July 2, 2019. **(See Defendant's Exhibit 6-5; Police Report with Attachments).**

Defendant was current on the obligations owing under the various agreements until about December 13, 2019, the final maturity date under Note 1. In January, 2020, Defendant defaulted on Note 2. On July 8, 2020, Plaintiff filed suit against Defendant in the Huron County Circuit Court, *Northstar Bank v Jonathon Razo*, Case No. 20-105695-CK, (the "State Court Proceeding") attached hereto as **Exhibit 6-6**, for breach of contract and claim and delivery of all secured collateral under the terms of the security agreements. The state court complaint alleged that Defendant was in default under the terms and conditions of the various loan documents for

his failure to make the required payments thereunder. It also sought claim and delivery under Michigan law as to all secured collateral as defined under the security agreements.

Plaintiff further alleged in its state court complaint that all collateral securing the notes pursuant to the security agreements had an estimated value of at least $5,000.00. Plaintiff later conceded in its own *Affidavit in Support of its State Court Motion for Summary Disposition*, attached hereto as **Exhibit 6-7,** that "[t]he value of the collateral pledged to support Loan #6154793 and Loan #616227 is $1,000 based upon information available at he [sic] time of making this affidavit." (**Exhibit 6-7**, ¶4).

Defendant filed an answer to Plaintiff's state court complaint on August 5, 2020, attached hereto as **Exhibit 6-8,** which states the following:

> "I Jonathon Razo would like to turn over the collateral of the toolbox and plow. I would like to enter an affordable monthly payment plan and will reach out to Zachary J Eskau to try to come up with an agreement."

(**Exhibit 6-8**).

On November 19, 2020, the Huron County Circuit Court entered an *Order Granting Summary Disposition in Favor of Plaintiff Northstar Bank*, attached to Plaintiff's adversary complaint as Exhibit 18. In the State Court Proceeding, the Circuit Court ruled in part,

> "Northstar Bank is entitled to immediate possession of all

collateral identified in the Commercial Security Agreement dated October 13, 2016 and executed by Defendant Jonathon L. Razo.

IT IS FURTHER ORDERED that Northstar Bank is entitled to immediate possession of all collateral identified in the Commercial Security Agreement dated November 15, 2017 and executed by Defendant Jonathon L. Razo.

IT IS FURTHER ORDERED that for purposes of MCR 3.105(H)(1)(b), the Court finds the value of the collateral listed in the aforementioned Commercial Security Agreements to be $1,000.00, which shall be credited against the judgment amount set forth above in this Order and Judgment when delivered into Northstar Bank's Possession."

(Adv. Pro. No. 21-02015-dob, Docket No. 26, Pg. 75). On February 11, 2021, Defendant filed his voluntary petition for relief under Chapter 7, Case No. 21-20154-dob (the "Chapter 7 Bankruptcy"). On March 8, 2021, Defendant and Plaintiff stipulated to relief from the automatic stay in favor of Northstar Bank as to the tool box, tools and plow, in which Plaintiff expressly acknowledged its prior receipt of said collateral from Defendant. The *Stipulated Order to Lift the Automatic Stay as to Northstar Bank*, (21-20154-dob Docket No. 17) is attached hereto as **Exhibit 6-9**.

On May 24, 2021, Plaintiff commenced the instant adversary proceeding which seeks a determination that the debt owed to Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(6). On September 16, 2021 Plaintiff filed its first Amended Complaint which was served on September

17, 2021 (See Adv. Pro. No. 21-02015-dob, Docket Nos. 26, 28). In its First

Amended Complaint Plaintiff has alleged that Defendant sold vehicles and

did not turn over proceeds, despite Plaintiff's perfected security interest.

Plaintiff has also alleged that Defendant improperly used the proceeds from

the sale of collateral pledged to plaintiff, including vehicles for Defendant's

own personal use, that this conduct was willful and malicious, that

Defendant acted deliberately in knowing disregard for Plaintiff's rights in the

collateral, that Defendant knew this conduct of keeping the proceeds from

the sale of inventory was improper and wrongful, and that at all relevant

times, Defendant was fully aware of Plaintiff's lien rights in the vehicles.

## LEGAL STANDARDS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

Where a claim is frivolous, a court may dismiss for lack of subject

matter jurisdiction under Rule 12(b)(1). *Evans v. B. F. Perkins Co.*, 166

F.3d 642, 647 (4th Cir. 1999).  "[A] district court may, at any time, *sua*

*sponte*, dismiss a complaint for lack of subject matter jurisdiction

pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the

allegations of a complaint are totally implausible, attenuated, unsubstantial,

frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*,

183 F.3d 477, 479 (6th Cir. 1999). *See also Hagans v. Lavine*, 415 U.S.

528, 536-37, 94 S. Ct. 1372, 39 L. Ed. 2d 577 (1974) (patently frivolous

case divests the district court of jurisdiction). A case is frivolous if it lacks arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), *Thompkins-El v. Wells Fargo Bank Minn.*, No. 05-74715, 2006 U.S. Dist. LEXIS 101051, at *6-7 (E.D. Mich. June 29, 2006). The defense of res judicata is jurisdictional in character. *Stanton v. Dist. of Columbia Ct. of Appeals*, 326 U.S. App. D.C. 404, 127 F.3d 72, 77 (D.C. Cir. 1997). Thus, a motion for dismissal based on *res judicata* properly falls under Federal Rule of Civil Procedure 12(b)(1). *Rizvi v. McClure*, 597 F. Supp. 2d 63, 66 (D.D.C. 2009).

In determining whether a state court judgment precludes relitigation of issues under the doctrine of collateral estoppel, the Full Faith and Credit Statute, 28 U.S.C. § 1738, requires bankruptcy courts to "'consider first the law of the State in which the judgment was rendered to determine its preclusive effect.'" *Bay Area Factors v. Calvert* (*In re Calvert*), 105 F.3d 315, 317 (6th Cir. 1997)(quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 375, 105 S. Ct. 1327, 84 L. Ed. 2d 274 (1985)). If the state courts would not deem the judgment binding under collateral estoppel principles, then the bankruptcy court cannot do so either. But if the state courts would give preclusive effect to the judgment, then the bankruptcy court [generally] must also give the judgment preclusive effect[.]

*Taleb v. Kramer (In re Kramer)*, 543 B.R. 551, 553 (Bankr. E.D. Mich. 2015). "Although the object and subject matter of the two suits or proceedings be different, the judgment of a court of competent jurisdiction upon a particular matter, fact or point, once litigated and determined, is conclusive between the parties, or their privies." *Id.* at 556.

## **LEGAL STANDARD FOR FAILURE TO STATE A CLAIM**

"Under Rule 12(b)(6), the complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs." *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). "However, a legal conclusion couched as a factual allegation need not be accepted as true." *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted)).

Instead, the factual allegations must "raise the right to relief above the speculative level." *Id*. (citing *Twombly*, 550 U.S. at 555). "The complaint must state a claim that is plausible on its face, i.e., the court must be able to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal quotations omitted)). This "plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  In *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149-50 (6th Cir. 1995), the Sixth Circuit Court of Appeals summarized the standard for summary judgment under Fed. R. Civ. P. 56:

> The moving party has the initial burden of proving that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  To meet this burden, the moving party may rely on any of the evidentiary sources listed in Rule 56(c) or may rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the jury.  *Id.* at 1478.  Essentially, a motion for summary judgment is a means by which to "challenge the opposing party to 'put up or shut up' on a critical issue."  *Id.*
>
> If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by a jury.  In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

However, if the evidence is insufficient to reasonably support a jury verdict in factor of the nonmoving party, the motion for summary judgment will be granted. *Street*, 886 F.2d at 1477. Thus, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

While a court must proceed cautiously in considering subjective issues, the Supreme Court has indicated that the existence of subjective issues does not necessarily foreclose summary judgment disposition. *Street*, 886 F.2d at 1479 (synthesizing *Anderson v. Liberty Lobby*, 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986), *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986), and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)). Thus, a nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations or subjective evidence. Instead, the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment. *Id*.

Finally, the Sixth Circuit has concluded that, in the "new era" of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson*, *Celotex*, and *Matsushita*, trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence. *Street*, 886 F.2d at 1480. The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion should be granted. *Id*.

*Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149-50 (6th Cir. 1995).

## **BURDEN OF PROOF OF NONDISCHARGEABILITY**

Plaintiff bears the burden of proving each of the elements of

nondischargeability by a preponderance of the evidence. *Grogan v. Garner*,

498 U.S. 279, 291 (1991); *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998) (citing *Grogan*). Furthermore, exceptions to discharge are to be strictly construed against the creditor. *Pazdzierz v. First Am. Title Ins. Co. (In re Pazdzierz)*, 718 F.3d 582, 586 (6th Cir. 2013); *Rembert*, 141 F.3d at 281. Under 11 U.S.C. §523(a)(6), "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." <u>Kawaauhau v. Geiger,</u> 523 U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998).

## ARGUMENT

### I. Dismissal is Warranted for Lack of Subject Matter Jurisdiction Based on Principles of Estoppel

Plaintiff lacks standing to pursue a determination of willful and malicious injury under 11 U.S.C. §523(a)(6) based on proper application of the doctrine of collateral estoppel. The subject matter of Plaintiff's claim in this adversary proceeding necessarily involves the question of Plaintiff's lien rights under various security agreements, which are grounded in state law. Adjudication of whether Defendant can be found liable for willful and malicious injury under §523(a)(6) therefore requires that this court relitigate the issue of whether Plaintiff had lien rights in secured collateral – assets which Plaintiff effectively abandoned in the state court proceeding, when Defendant was found to have unlawfully taken or wrongfully detained

certain assets under the security agreements.

The parties do not dispute that Plaintiff brought a state court action against Defendant for claim and delivery of certain collateral in which Plaintiff maintained it held a valid security interest. Plaintiff successfully litigated the claim and delivery suit, which required a finding that Defendant had unlawfully taken or detained collateral which Plaintiff had a right to possess and recover as of the time that action was commenced. In the state court action, Plaintiff articulated in its pleadings and on the record that the *only* collateral stemming from the "simple loan collection action" for "promissory notes that have been breached by failure to timely pay them" consisted of a toolbox, tools and a snow plow. This was characterized by the Plaintiff at the hearing on its Motion for Summary Disposition as "some collateral at issue in this case, your Honor, this has all been documented with the loan documents and the security documents." **(See Defendant's Exhibit 6-10 Transcript of Hearing on November 19, 2020).**

Plaintiff failed to assert or even raise its alleged lien rights in any other collateral that could have been identified under the security agreements during the course of the state court claim and delivery proceeding. Plaintiff now asserts that in addition to the snow plow, tools and tool box, other secured collateral was unlawfully taken or wrongfully

detained by Defendant, in its present attempt to seek nondischargeability of the debt that was owing. Plaintiff's failure to raise or assert its right to recovery for other collateral under the security agreements in its state court claim and delivery action failed to put Plaintiff on direct notice of this alleged lien right. The issue of all collateral under the security agreements that was alleged to have been unlawfully taken or detained by the Defendant was an issue that was central to the adjudication in that suit. The issue was actually litigated and necessarily determined between parties in privity, which resulted in the entry of a final order on the merits following meaningful participation by both sides.

## II. Plaintiff Was Not Prohibited from Asserting Its Right to Recovery of the Vehicles or Sale Proceeds in the Claim and Delivery Action

Plaintiff was not prohibited from seeking claim and delivery of all collateral under the security agreements during the course of its state court action, or from alleging tortious conduct with respect to Defendant's alleged violation of the security agreements. Plaintiff denies that principles of estoppel bar this adversary proceeding, arguing that the inventory vehicles Defendant allegedly sold, and proceeds of such sales were outside the scope of the claim and delivery cause of action under Michigan law. Michigan Court Rule 3.105 governs state law claim and delivery causes of

action to recover possession of goods or chattels which have been unlawfully taken or unlawfully detained. Section (B) of this rule states that "a claim and delivery action is governed by the rules applicable to other civil actions, except as provided in MCL 600.2920, and this rule." MCR 3.105(B). MCL 600.2920(c) provides that "[a]n action may not be maintained under this section by a person who, at the time the action is commenced, does not have a right to possession of the goods or chattels taken or detained. Mich. Comp. Laws Serv. § 600.2920."

Plaintiff has plead and argued in *this* proceeding that it was precluded from attempting to assert its lien right in the collateral consisting of inventory vehicles or the proceeds from the sale of those vehicles on account of MCL 600.2920(c). Plaintiff admitted that it "had no claim to possession of the collateral or the proceeds from collateral" at the time the state court action was commenced. (See Plaintiff's Response and Brief in Support Adv. Pro. 21-02015-dob Doc. No. 13, Pg. 3). By making this admission, and in failing to assert a right to possession of any other collateral under the security agreements, Plaintiff has effectively abandoned its ability to claim a right to possession in any other assets covered by the security agreements. "It is not sufficient for a party 'simply to announce a position or assert an error and then leave it up to this Court to

discover and rationalize the basis for [her] claims, or unravel and elaborate for [plaintiff her] arguments, and then search for authority either to sustain or reject [her] position.' " *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). A party also may not give issues cursory treatment with little or no citation to supporting authority. *Goolsby v Detroit*, 419 Mich 651, 655 n 1; 358 NW2d 856 (1984); *Silver Creek Twp v Corso*, 246 Mich App 94, 99; 631 NW2d 346 (2001). Plaintiff's "failure to properly address the merits of [her] assertion of error constitutes abandonment of the issue." *Houghton v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003), citing *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). *Parks v. Parks*, No. 343867, 2019 Mich. App. LEXIS 6543, at 25-26 (Ct. App. Oct. 22, 2019).

The statute governing claim and delivery qualifies the subject of recovery as "goods or chattels" that a movant seeking replevin must have a right of possession in. A claim under MCL 600.2920(1) can be maintained by proving that "*any* goods or chattels . . . have been unlawfully taken or unlawfully detained . . . ." *Bartosiewicz v. A2q*, Nos. 345942, 345944, 2020 Mich. App. LEXIS 2030, at 25 (Ct. App. Mar. 17, 2020) (Emphasis added). It follows that under the terms of the parties' security agreements, the

statute would apply to all collateral that Plaintiff would or could have claimed a valid interest in. This is underscored by the broad language recorded by Plaintiff on the UCC financing statements it duly perfected. The claim and delivery statute therefore does encompass motor vehicles held as inventory or sold, as well as proceeds from the sale of such assets that could have been recovered for alleged unlawful taking or detention.

The fact that the vehicles themselves and the sale proceeds were not in Plaintiff's or Defendant's physical possession at the time the claim and delivery action was brought is completely immaterial to this discussion and mischaracterizes the statute. This is particularly so, where Mich. Ct. R. 3.105(c)(4) requires that the movant of a claim and delivery action "(4) specifically describe the nature of the claim and the basis for the judgment requested. If the action is based on a security agreement, a claim for the debt may be joined as a separate count in the complaint." MCR 3.105 ). In the context of MCL 600.2920(1)(c) and the common-law of replevin, MCR 3.105(C)(3) is a procedural rule that governs how a plaintiff should properly plead entitlement to the possession of the property claimed at the commencement of the action. *Galasso v. Surveybrain*, No. 303300, 2012 Mich. App. LEXIS 930, at 9 (Ct. App. May 15, 2012).

Although Plaintiff asserted a claim for the debt under the security

agreements by way of a breach of contract count in the state court action, it failed to allege that Defendant unlawfully withheld or detained the collateral sale proceeds. Plaintiff failed to specifically describe the nature of Defendant's alleged unlawful detention of, willful and malicious injury to, or raise a claim of conversion regarding the sale proceeds which might have provided a basis for Plaintiff's entitlement to different relief at this junction. The facts are not in dispute, that Plaintiff sought recovery for a simple breach of contract claim for the debt owing under the security agreement, alleging that Defendant committed unlawful conduct solely with respect to the tool box, tools and snow plow. "In a contractual setting, a tort action must rest on a breach of duty distinct from contract." *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603, 374 N.W.2d 905 (1985). The gravamen of an action is determined by reading the claim as a whole, examining the essential facts or grievance as alleged. *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 399 (E.D. Mich. 2000).

Therefore, even though the proceeds from the sale of vehicles may have been out of the physical possession of the parties at the time that Plaintiff commenced the claim and delivery action, Plaintiff was required by statute to provide a detailed basis for recovery and entitlement to relief. Plaintiff is estopped from pursuing willful and malicious injury under 11

U.S.C. §523(a)(6), where Plaintiff claimed nothing more than breach of contract as the cause of action for the underlying debt based on a security agreement in a claim and delivery action. Plaintiff cannot expect a heightened entitlement to relief such as nondischargeability for breach of contract in a subsequent action, based on newly alleged tortious conduct. "Unlike a tort claim, a successful replevin claim is limited in damages to the recovery of the lost value of the property itself plus interest." *J. L. Hudson Co*., 255 Mich. at 470; *Betman*, 266 Mich. at 25., *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 400 (E.D. Mich. 2000).

Thus, Plaintiff's failure to assert its right to recovery of the proceeds from the sale of motor vehicles by only asserting a breach of contract as to the underlying debt is akin to Plaintiff's abandonment of its security interest in this collateral asset, and precludes a finding of nondischargeability.

### III. Plaintiff's § 523(a)(6) Claim Must Fail Because Plaintiff Cannot Prove Essential Elements of The Claim

In the sole count contained in the adversary complaint, Plaintiff asserts that Defendant's debt owed to Plaintiff is excepted from discharge under 11 U.S.C. § 523(a)(6).

11 U.S.C. § 523(a)(6) provides:
(a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

6) for willful and malicious injury by the debtor to another entity
or to the property of another entity[.]

Under the Bankruptcy Code, "debt" is defined as "liability on a claim."
11 U.S.C. § 101(12). Defendant's only liability on Plaintiff's claim arises
pursuant to the *Order Granting Summary Disposition in Favor of Plaintiff
Northstar Bank* (See Adv. Pro. No. 21-02015-dob, Docket No. 1-11). The
monetary judgment award rendered in the state court in favor of Plaintiff
against Defendant for breach of contract is not nondischargeable under 11
U.S.C. § 523(a)(6), because Plaintiff has failed to plead sufficient or
plausible allegations to raise a right to relief, such that Plaintiff cannot,
under any circumstances prove the necessary elements to establish
nondischargeablity.

"Willful" conduct, for purposes of § 523(a)(6), requires "actual intent
to cause injury," "not merely a deliberate or intentional *act* that leads to
injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed.
2d 90 (1998). The Sixth Circuit "defined "malicious," for purposes of §
523(a)(6), to mean "in conscious disregard of one's duties or without just
cause or excuse . . ." *(In re Berge)*, 953 F.3d at 915 (citations omitted); *see
also Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (defining
"malicious" as "wrongful and without just cause or excuse, even in the
absence of personal hatred, spite, or ill-will") (quotations omitted); *Sells v.*

*Porter* (*In re Porter*), 539 F.3d 889, 894 (8th Cir. 2008) ("Maliciousness is conduct targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause . . . harm.") *MarketGraphics Research Grp., Inc. v. Berge (In re Berge)*, 953 F.3d 907, 915 (6th Cir. 2020).

Plaintiff's complaint fails to state a claim for relief under §523(a)(6) considering the facts involved in this case. Plaintiff cannot prove Defendant's breach of contract was intentional for purposes of §523(a)(6), without just cause or excuse under the circumstances. The Court is asked to recall that in addition to the approximately $144,000.00 that was transferred out of the Northstar Bank line of credit account, Defendant also, willingly transferred and lost over $26,000 of his own savings under the false impression that he was obtaining release of significant investments. Plaintiff simply cannot prove that Defendant knew or had the ability to appreciate that the consequences of his actions might be the cause of his own reckless injury, namely, the loss of over $26,000.

Although Plaintiff has argued that there does not need to be specific intent on behalf of the Defendant to cause injury to Plaintiff if the Defendant knew and believed that economic damage to Plaintiff was substantially certain to result from his actions, conflating tortious conduct with intent to injure conflicts with core principles of bankruptcy law and its underlying

28

legislative scheme. A fundamental policy of bankruptcy law is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." Expanding the scope of § 523(a)(6) to include contracts that are intentionally breached whenever it is substantially certain that injury will occur would severely circumscribe the ability of debtors to "start afresh." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (citation omitted).

The Supreme Court's reasoning in *Geiger* also supports this conclusion; That the Supreme Court in *Geiger* assumed that § 523 (a)(6) encompassed only intentional torts, not intentional breaches of contract, strongly suggests the Court would not approve of a definition of "tortious conduct" that would include intentional breaches of contract whenever it is substantially certain that the breach will cause injury. *Bank of Am., NA v. Killgrove (In re Killgrove)*, Nos. 11-62528, 11-06687, 2013 Bankr. LEXIS 5507, at 30-31 (Bankr. E.D. Mich. Dec. 20, 2013). With this reasoning in mind, it is simply impossible for Plaintiff to prove that Defendant knew there was a chance that the proceeds from the sale of inventory would have essentially disappeared based on his transfers of funds at the time he directed Plaintiff to make the transfers.

The Sixth Circuit has also repeatedly held that a breach of contract claim cannot support an action under 11 U.S.C. § 523(a)(6). *Thompson v. McCoy (In re McCoy),* Nos. 18-49076-MBM, 18-04441, 2019 Bankr. LEXIS 500, at 16 (Bankr. E.D. Mich. Feb. 20, 2019) (A breach of contract claim does not create a cause of action under 11 U.S.C. S. 523(a)(6)); *Steier v. Best (In re Best)*, No. 03-5098, 2004 U.S. App. LEXIS 13773, at 6 (6th Cir. June 30, 2004) ("A breach of contract cannot constitute the willful and malicious injury required to trigger 11 U.S.C. § 523(a)(6).").

For Plaintiff to allege that Defendant acted in knowing disregard of Plaintiff's rights, or that he knew this act would cause injury to the Plaintiff cannot be established based on the facts, the pleadings, and the prior state court action in this particular case. In this light, the record is devoid of any plausible factual allegation that Defendant acted or could have acted with the subjective intent or knowledge that his actions would cause Plaintiff to suffer economic harm. These allegations amount to a scant formulaic recitation of the basic elements of willful and malicious injury, based upon alleged facts that cannot sustain any viable legal theory of entitlement to relief in light of the record in the claim and delivery action. Plaintiff cannot legally raise a right to relief where it is impossible for Plaintiff to produce evidence to support these facially incorrect facts.

As this brief has already established, Plaintiff's argument is further untenable where Plaintiff rests its dischargeability action on a breach of contract claim in the claim and delivery action. The statute governing claim and delivery required plaintiff to provide a specific basis for its right to relief for recovery of a debt in connection with a security agreement. In that action, Plaintiff pled and argued that Defendant's simple failure to pay under the notes constituted a breach of the security agreements for entitlement to a breach of contract claim. Plaintiff now seeks to use the judgment arising out of its claim and delivery action in an improper attempt to except the judgment amount from Defendant's discharge.

Plaintiff cannot meet its burden of proof required to establish a claim for willful and malicious injury based on its state court judgment. At the hearing on Plaintiff's motion for summary disposition in the State Court Proceeding: (1) Defendant offered to enter a repayment plan with Plaintiff; (2) Plaintiff's counsel – on the record – stated that there was no other genuine issue of material fact in existence; and (3) all requests to admit – including Defendant's admission regarding the value of the totality of all secured collateral defined under the security agreements was accepted as true. Accordingly, the parties litigated this issue to a final judgment, with the understanding Plaintiff obtained a basic judgment on its simple breach of

contract claim, together with recovery of the collateral that was unlawfully withheld or wrongfully detained by Defendant.

Accordingly, Plaintiff has failed to adequately plead a right to relief in its adversary complaint, and therefore cannot establish the requisite elements for a claim of willful and malicious injury under §523(a)(6) as a matter of law.

## IV. Plaintiff's § 523(a)(6) Claim is Barred Judicial Estoppel

Plaintiff rests its nondischargeability action on a breach of contract claim that was previously litigated in the claim and delivery suit, and which resulted in a monetary judgment in favor of Plaintiff. In the totality of the pleadings filed in the state court, Plaintiff pled simple breach of contract, and claim and delivery of collateral under the breached security agreements. In the instant adversary complaint, however, Plaintiff alleges an inconsistent position at variance with the pleadings and the record in the state court action. To the extent that Plaintiff takes a position inconsistent with that which it previously took and prevailed on in earlier litigation between the parties, Plaintiff's claim is judicially barred.

Judicial estoppel is an equitable doctrine invoked to preserve the integrity of our judicial system. *New Hampshire v. Maine*, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). Generally speaking, the

doctrine serves to prevent a party from engaging in "cynical gamesmanship" by arguing and prevailing on one position before one court, and then arguing the opposite position before another. *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008) (internal citations omitted). For judicial estoppel to apply, three features should be present: (1) the party's prior and later positions are clearly inconsistent; (2) the earlier court accepted the prior position; and (3) the opposing party would be unfairly disadvantaged by the subsequent court accepting the party's later, inconsistent position. *New Hampshire*, 532 U.S. at 750-51 (internal quotation marks and citations omitted); *see also Lorillard Tobacco Co.*, 546 F.3d at 757 (citing *Excel Energy, Inc. v. Smith* (*In re Commonwealth Inst. Sec.*), 394 F.3d 401, 406 (6th Cir. 2005)). *MarketGraphics Research Grp., Inc. v. Berge (In re Berge)*, 953 F.3d 907, 922 (6th Cir. 2020).

In its state court complaint, Plaintiff alleged the "¶26 Collateral has an estimated value of at least $5,000.00." (**Exhibit 6-6**, Pg. 4). Plaintiff's prayer for relief included a request that the state court "Require Defendant to turn over to Bank all Collateral, as defined under the Security Agreement." (See **Exhibit 6-6**, Pg. 5). In *Plaintiff's First Requests for Admissions to Defendant* attached hereto as **Exhibit 6-11**, Plaintiff asked

Defendant to admit in the State Court Proceeding "¶18 that the value of the collateral (as it is defined in [Security Agreement 1 and Security Agreement 2] does not exceed the amount due and owing from Defendant to Bank."

(**See Exhibit 6-11**, Pg. 6). At the hearing on Plaintiff's Motion for Summary Judgment in the state court proceeding, the Plaintiff argued unequivocally,

> "Your Honor, this case is a simple loan collection action and we are here today on Northstar Bank's motion for summary disposition. In this particular case, your Honor, the bank and Mr. Razo entered into two promissory notes as of July 7th the total amount due under those promissory notes totals $145,095.55. The promissory notes that have been breached by failure to timely pay them; there is some collateral at issue in this case, your Honor. This has all been documented with the loan documents and the security documents. There is an affidavit attached to the motion from the bank setting forth the proofs necessary; but in addition, your Honor, the reason summary disposition is appropriate here is because there is no genuine issue of material because Mr. Razo has admitted all of the allegations."

(See *Transcript of Hearing on November 19, 2020*, attached hereto as **Exhibit 6-10** Pg. 3-4, Ln. 14-4 ); "The allegations that Northstar Bank had made in its complaint have been fully admitted before the Court such that there is no genuine issue of material fact and judgment in favor of the Plaintiff, as a matter of law, is appropriate, your Honor." *Id*. at 5, Ln. 9-13.

In its *Order Granting Summary Disposition In Favor of Plaintiff Northstar Bank*, prepared and submitted to the state court for execution on its motion, the Plaintiff sought and obtained an order that "Northstar Bank is entitled to immediate possession of all collateral identified in the

Commercial Security Agreement Dated October 12, 2016 and executed by Defendant Jonathon L. Razo. It is further ordered that Northstar Bank is entitled to immediate possession of all collateral identified in the Commercial Security Agreement dated November 15, 2017 and executed by Defendant Jonathon L. Razo. (Adv. Pro. No. 21-02015-dob, Docket No. 26, Pg. 76).

In direct contravention of what was pled, argued, and the relief that Plaintiff obtained in the state court proceeding, Plaintiff now seeks to introduce inconsistent facts to support its faulty claim for fraud. Plaintiff's current attempt to raise issues of fact that were absent from or contrary to the identical questions of fact previously plead and actually litigated in the claim and delivery action, in which Plaintiff prevailed, is barred by judicial estoppel.

Judicial estoppel is applicable in this instance, where Plaintiff Northstar Bank's prior position, that this case involved a simple breach of contract for failure to pay with no other genuine material issue of fact in existence, is clearly inconsistent with Plaintiff's current position; that Defendant acted with willful and malicious intent in failing to repay the notes. Prong 1 of the requirements for judicial estoppel is therefore satisfied. Prong 2 of the requirements for judicial estoppel is also satisfied,

where the court in the prior case accepted the facts as previously plead by plaintiff. The state court ruled that *all* collateral identified in the security agreements, namely, the tool box, the tools and plow were to be turned over to Plaintiff, that the value of the collateral was found to be $1,000 based on Plaintiff's own affidavit, and that no other genuine issue of material fact existed such that summary disposition in Plaintiff's favor for the simple breach of contract matter was appropriate.

Prong 3 of judicial estoppel is also met, where the Defendant would be unfairly disadvantaged if the Bankruptcy Court were to accept the new, unsupported, inconsistent fact pattern asserted by the Plaintiff in this subsequent action. The Defendant avers that judicial estoppel must be applied to bar Plaintiff from making subsequent inconsistent claims in this case, in support of its nondischargeability action. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Sesi v. Fannie Mae*, No. 10-12966, 2012 U.S. Dist. LEXIS 32555, at 16 (E.D. Mich. Mar. 12, 2012). Defendant asserts that judicial estoppel applies to bar the Plaintiff from making and relying upon false claims of fact in support of its right to relief in this adversary proceeding.

**V.    Plaintiff's § 523(a)(6) Claim is Barred by Collateral Estoppel**

Plaintiff's claim based on questions of fact and issues previously determined is barred by collateral estoppel. "The doctrine of collateral estoppel dictates that once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *NAACP v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987) (citations and internal quotations omitted).

> Under federal law, the elements of collateral estoppel are: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Signature Mgmt. Team, LLC v. Doe*, No. 5:13-cv-14005, 2015 U.S. Dist. LEXIS 33122 (E.D. Mich. March 18, 2015) (citing *NAACP v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987)).

The Sixth Circuit has explained that "[t]he essence of collateral estoppel by judgment is that some question or fact in dispute has been judicially and finally determined by a court of competent jurisdiction between the same parties or their privies." *Tipler v. E.I. Du Pont de Menours & Co.*, 443 F.2d 125, 128 (6th Cir. 1971). "Thus the principle of such an estoppel may be stated as follows: Where there is a second action

between parties, or their privies, who are bound by a judgment rendered in a prior suit, but the second action involves a different claim, cause, or demand, the judgment in the first suit operates as a collateral estoppel as to, but only as to, those matters or points which were in issue or controverted and upon the determination of which the initial judgment necessarily depended." *Id*.

Generally, "collateral estoppel principles . . . apply in discharge proceedings pursuant § 523(a)." *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 318 (6th Cir. 1997) (citing *Grogan v. Garner*, 498 U.S. 279, 284 n11 (1991)). The bankruptcy court is to determine whether applicable state law would give collateral estoppel effect to the state court judgment. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997)).

Under Michigan law, "[c]ollateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in that prior proceeding. *Redburn v. Farmers Ins. Exch*., No. 345216, 2020 Mich. App. LEXIS 67, at 3 (Mich. Ct. App. Jan. 7, 2020) (citing *Radwan v. Ameriprise Ins. Co*., 327 Mich. App. 159, 166 (2018)). "[F]or collateral estoppel to apply three

elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; (3) there must be mutuality of estoppel." *Id*. at 3-4 (citing *Radwan*, 327 Mich. App. 159, at 166).

"With respect to the first element, the ultimate issue in the subsequent action must be identical, and not merely similar to the ultimate issue in the first action." *Id*. at *4 (citing *Rental Prop. Owners Ass'n Kent Co.*, 308 Mich. App. 498, 529 (2018)). "[m]utuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party . . . in the previous action. In other words, the estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him." *Monat v. State Farm Ins. Co.*, 469 Mich. 679, at 684-685 (2004).

"In determining whether the parties in the first action had a full and fair opportunity to litigate an issue, a court should consider numerous factors, including: whether the party against whom estoppel is asserted had a legal right to appeal; whether the issue is one of law and the two actions are substantially unrelated or an intervening change merits a new determination; whether a new determination is merited by differences in the

procedures; whether the party against whom estoppel is asserted had a significantly heavier burden of persuasion as to the issue in the first action; and, whether there is a clear and convincing need for a new determination because of the effect on the interests of the public or nonparties, the unforeseeability that the issue would arise in a later proceeding, or because the party against whom estoppel is asserted did not have adequate opportunity or incentive to obtain a full and fair adjudication in the first action." *Riversbend Rehab., Inc. v. Enos*., No. 335847, 2018 Mich. App. LEXIS 801, at 2 (Mich. Ct. App. March 22, 2018).

Based on the foregoing, Plaintiff's claim under 11 U.S.C. § 523(a)(6) is collaterally estopped, where the instant claim is based (1) on the issue of secured collateral, the disposition and value of which were previously litigated and necessarily determined; and (2) the limited collateral that Plaintiff alleged was unlawfully taken or unlawfully detained, resulting in the turnover of a snow plow, tools and a tool box valued at $1,000.00, together with a breach of contract judgment.

The state court's determination of the identity and value of the relevant secured collateral was quintessential to its judgment. This is because the state court's decision included both the determination of a monetary award less the value of the collateral ordered to be returned, and

a determination that the collateral Plaintiff claimed a lawful right to possess was unlawfully taken or detained, such that turnover under the state court count for claim and delivery was adjudicated in Plaintiff's favor. The state court necessarily had to evaluate what collateral Plaintiff was entitled to return of and the value of that collateral to reach a final award.

Plaintiff now raises a distinct cause of action specific to Defendant's bankruptcy – a claim under 11 U.S.C. § 523(a)(6), in which Plaintiff asks this court to consider these identical issues that the state court considered to support a claim under §523(a)(6). It follows that the prior action resulted in a final judgment that was both actually litigated and necessarily determined. The Sixth Circuit has held that where a state court has "issued an opinion with detailed findings of fact and conclusions of law based on pretrial affidavits, depositions, and trail briefs . . . [t]hat decision is sufficiently firm to be accorded conclusive effect." *Employees Own Federal Credit Union v. Defiance*, 752 F.2d 243, 245 (6th Cir. 1985).

Under Michigan law, "a decision is final when all appeals have been exhausted or when the time for taking an appeal has passed." *Cantwell v. Southfield*, 105 Mich. App. 425, (1981) (citation omitted). In the instant matter, the time for an appeal has passed. Under Mich. Ct. Rule 7.204(A)(1)(a), "an appeal of right in any civil case must be taken within 21

days. The period runs from the entry of . . . the judgment or order appealed from."

The state Court entered its judgment in Plaintiff's favor on November 19, 2020. The present action by far exceeds the allotted 21 days to appeal a civil decision that on its very face states "This is a final order and closes the case." (Adv. Pro. No. 21-02015-dob, Docket No. 26, Pg. 76). Furthermore, the State Court Proceeding was fully litigated where each party submitted their claims and defenses to the court with supporting evidence. After a hearing on the merits, the state court issued a final judgment, awarding Plaintiff return of collateral and a money judgment.

Plaintiff had a full and fair opportunity to litigate the matter in the State Court Proceeding. Plaintiff had the ability to file all necessary claims and request any additional information as it related to the identity and value of collateral, the unlawful taking or detention of chattels to which Plaintiff was entitled, and the resulting injury to Plaintiff within the context of breach of the notes and underlying security agreements. Plaintiff appeared before the state court to explain its position, articulated its right to a judgment as a matter of law on these claims, which the state court subsequently entered. Nothing in the record supports a finding that Plaintiff did not have a fair and full opportunity to litigate this issue to its satisfaction. Therefore, prongs one

and two of the enumerated requirements for collateral estoppel under Michigan law – identity of fact and questions of law that were necessary for purposes of the state court judgment both actually litigated and necessarily determined, are met. The third element of collateral estoppel under Michigan law – mutuality of estoppel – is plainly evident in this matter. Both Plaintiff and Defendant were parties to the State Court Proceeding.

The foregoing establishes that Plaintiff's § 526(a)(6) claim must be collaterally estopped, where applicable state law would give preclusive effect to the state court judgment which settled issues that were previously litigated, actually determined, and which this Court would be required to reevaluate. Application of collateral estoppel prevents Plaintiff from raising these issues in the instant adversary proceeding. As is such, the Plaintiff's factual allegations concerning previously litigated issues are barred. By application of collateral estoppel, the complaint cannot under raise any speculative right to a claim for relief under §523(a)(6), requiring dismissal of the adversary complaint.

## VI.    Plaintiff's § 523(a)(6) Claim is Barred by Res Judicata

Although the bankruptcy court is often reluctant, and even prohibited from applying the doctrine of res judicata in subsequent actions involving dischargeability questions, Defendant nonetheless raises this defense

herewith. In Michigan, the doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. *Adair v. State,* 680 N.W.2d 386, 396 (Mich. 2004).

Notwithstanding the fact that willful and malicious intent as required for a finding of §523(a)(6) is not a *per se* statutory requirement for proving claim and delivery under Mich. Ct. R. 3.105, this claim does nonetheless require the *unlawful taking* or *unlawful detention* of another's property, which is akin to the wrongful exercise of dominion and control over the property of another. This 'unlawfulness' required for a state claim and delivery count is essentially consistent with the requisite intent to cause unlawful injury to the property of another for purposes of pleading willful and malicious injury under § 523(a)(6). It follows that Plaintiff had the ability to seek an enhanced judgment for potential willful and malicious destruction of property under Michigan law in the state court action for breach of contract and claim and delivery of the secured collateral, but elected not to.

This election made by Plaintiff in its state court claim and delivery action draws striking parallels to the case of *Fisher v. Cornell Engineering*, Mich. App. LEXIS 2369, 2007 WL 3033955 (Mich. Ct. App. Oct. 18, 2007), in which Fisher filed a district court complaint against a car engine repair shop for breach of contract, misrepresentation, fraud, violation of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, statutory and common law conversion, and violation of the Michigan Motor Vehicle Service and Repair Act, Mich. Comp. Laws § 257.1301. In the complaint, Fisher requested "total damages in the amount of the value of the subject vehicle at the time of conversion, plus incidental and consequential damages." *Morrison v. Carmona (In re Carmona)*, 424 B.R. 227, 233 (E.D. Mich. 2010). Eventually, Fisher and D&S accepted a case evaluation for $16,500.

Fischer subsequently filed a suit for claim and delivery of the car in question, seeking recovery and possession of the vehicle from the auto body shop. The auto body shop sought a declaratory judgment seeking an award of title free and clear to the car, together with damages and costs resultant from the outcome of the initial suit which concluded with the case evaluation monetary judgment award for Fischer. The court awarded relief to the auto body shop, finding that res judicata barred Fischer's subsequent

suit for claim and delivery *after* settling the parties property rights (i.e.; a monetary judgment in favor of Fischer, and retention of the vehicle by the auto body shop). Fischer appealed this determination to the Michigan Court of Appeals, which affirmed the circuit court's decision based on principles of res judicata, in light of the parties having already litigated and accepted their state law rights.

The court of appeals found that "the issue of possession and title of the car was an issue that could have been raised by the Fishers in the first action." 2007 Mich. App. LEXIS 2369, at 4. The court explained that "whether choosing not to seek the return of the [car] was a strategic decision or a mistake is now of no consequence because the case is fully settled since both parties accepted the case evaluation award." *Id*. Thus, the court concluded that res judicata prevented the Fishers from requesting claim and delivery of the car. *Id*. In contrast, res judicata did not bar the auto body shop from seeking title because "[i]t was not until after the Fishers chose the manner of compensation for the tort -- solely a money judgment rather than the return of the car or the return of the car together with a sum of money -- were the parties' rights defined." *Id*. *Morrison v. Carmona (In re Carmona)*, 424 B.R. 227, 234 (E.D. Mich. 2010).

In drawing comparisons between Fisher and the instant matter, it is clear that res judicata would similarly apply to bar Plaintiff from attempting to procure a different result with regard to its breach of contract judgment award. Although Fischer alleged tortious wrongdoing in his initial complaint, he ultimately settled in the case evaluation process, accepting a monetary judgment in lieu of pursuing a tort claim. The monetary judgment award which Fischer selected in the initial proceeding was then upheld when he sought recovery of the vehicle itself by claiming that it had been wrongfully detained through a claim and delivery action. Whether Plaintiff Northstar Bank mistakenly elected not to pursue unlawful detention of the proceeds of the sale of inventory in the claim and delivery action is truly of no consequence at this point in time. Plaintiff had the opportunity to seek a tort claim as opposed to a breach of contract claim in the claim and delivery suit, but chose not to. Plaintiff was awarded a monetary judgment for Defendant's breach of contract, and Plaintiff recovered the snow plow, tool box and tools, the only collateral for which it sought specific recovery of under the security agreement.

Therefore, Defendant argues that to the extent the principals of res judicata may also be applied to bar Plaintiff from now asserting a claim between these parties in privity, which should and could have been raised

in the prior litigation, and are now asserted by Plaintiff in this adversary proceeding.

### VII. Plaintiff's §523(a)(6) Claim Must be Dismissed as a Violation of the Full Faith and Credit Act

Plaintiff's §523(a)(6) claim cannot proceed, as its determination by the Bankruptcy Court would constitute a violation of the of the Full Faith and Credit Act. The Full Faith and Credit Act provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they would have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. The United States Supreme Court has explained that "[t]his statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered." *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S. Ct. 1327, 84 L. Ed. 2d 274 (1985). Thus, "the preclusive effect of [a] Michigan court judgment in this Court is governed by Michigan law." *Kesler v. Barris, Sott, Denn & Driker, PLLC*., 482 F. Supp. 2d 886, 905 (E.D. Mich. 2007).

It follows that under Michigan law, the Plaintiff elected to pursue a breach of contract claim to support a judgment for the underlying debt associated with the security agreements, where it could have elected to

raise a tort. The entire substance of Plaintiff's factual allegations concerns the re-litigation of questions of fact and issues of law that were actually litigated and necessarily determined in the prior state court action. Moreover, Plaintiff has based its adversary complaint on allegations of fact which are squarely at odds with the relief Plaintiff already received. Plaintiff's attempt to allege facts based on a prior inconsistent position which is properly barred by issue preclusion is "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" by way of collateral estoppel. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). As it has been fully discussed in the aforementioned sections of this brief, principles of collateral estoppel, judicial estoppel and res judicata under Michigan law would apply in the case at bar to prevent Plaintiff from seeking a redetermination of both claims and issues that were previously determined in the claim and delivery action.

## CONCLUSION

In conclusion, this Honorable Court should grant dismissal of the adversary proceeding in Defendant's favor as the record is devoid of sufficient material facts or legally acceptable allegations that would tend to raise the right to relief above speculation, or at all, on a claim asserted pursuant to 11 U.S.C. § 523 (a)(6). The amended complaint has failed to

state a plausible claim for relief, where plaintiff has not and cannot allege facts that would tend to raise a right to relief beyond the level of speculation. The amended adversary complaint contains nothing more than threadbare recitals of the elements of a cause of action for willful and malicious injury, supported by mere conclusory statements and purely inconsistent facts. Plaintiff lacks standing to pursue a determination of willful and malicious injury under 11 U.S.C. §523(a)(6) based on principles of preclusion and estoppel under Michigan law. Dismissal of Plaintiff's claim is further warranted pursuant to Fed. R. Civ. P. 12(b)(6). Where there exists no genuine issue of material fact exists, the Defendant is further entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56(a).

Therefore, Plaintiff is entitled to judgment as a matter of law, dismissing the complaint in its entirety, with prejudice.

WHEREFORE, Defendant respectfully requests the Court (1) to enter the proposed order filed herewith as **Exhibit 1** granting Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment on Count I of the Adversary Complaint, dismissing this adversary proceeding with prejudice and (2) to grant Defendant such other and further relief as the Court deems just and proper.

Dated: October 1, 2021                    Respectfully submitted,

                                          WOLFSON BOLTON PLLC

                                          By:   /s/ Michelle H. Bass
                                                Michelle H. Bass (P71358)
                                                3150 Livernois, Suite 275
                                          Troy, MI 48083
                                          Telephone: (248) 247-7070
                                          mbass@wolfsonbolton.com


                                          Counsel to Jonathon L. Razo

# EXHIBIT 4

{00109535.DOCX }

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**

In re:                                              Chapter 7

 Jonathon L. Razo,                                  Case No. 21-20154-dob

                          Debtor.                   Hon. Daniel S. Opperman

_____

Northstar Bank,

         Plaintiff,                                 Adv. Pro. No. 21-02015-dob

v.

Jonathon L. Razo,

         Defendant.

_____/

## CERTIFICATE OF SERVICE

I certify that, on October 1 2021, *Defendant's Renewed Motion to Dismiss or in the Alternative Motion for Summary Judgment* was electronically filed with the Clerk of the Court using the Court's ECF system, which shall send notification of such filing to all ECF participants.

Dated: October 1, 2021       Respectfully submitted,

WOLFSON BOLTON PLLC

By:  /s/ Michelle H. Bass
    Michelle H. Bass (P71358)
    3150 Livernois, Suite 275
Troy, MI 48083
Telephone: (248) 247-7070
mbass@wolfsonbolton.com

Counsel to Jonathon L. Razo

# EXHIBIT 6

{00109535.DOCX }

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**

In re:                                              Chapter 7

Jonathon L. Razo,                              Case No. 21-20154-dob

                        Debtor.              Hon. Daniel S. Opperman

_____

Northstar Bank,

        Plaintiff,                                   Adv. Pro. No. 21-02015-dob

v.

Jonathon L. Razo,

        Defendant.

_____/

**EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| 6-1 | Personal Transfers |
| 6-2 | Evidence of Investment Earnings |
| 6-3 | Correspondence Requesting Tax Payments |
| 6-4 | Northstar Bank Wire Transfer |
| 6-5 | Police Report with Attachments |
| 6-6 | State Court Complaint |
| 6-7 | Affidavit in Support of State Court Motion for Summary Disposition |
| 6-8 | Defendant's Answer to the State Court Complaint |
| 6-9 | Stipulated Order for Relief |
| 6-10 | Transcript of Hearing, November 19, 2020 |
| 6-11 | Plaintiff's First Requests for Admissions |

# EXHIBIT 6-1

{00109535.DOCX }

# CHEMICAL BANK (321)
## Funds Transfer / Payment Order Request

| | |
|---|---|
| *Today's Date* | 20-MAY-2019 |
| *Branch Name* | |
| *Originator's Account* | |
| *Online Institution's Routing Number (9 digits)* | |

*Transfer Date*  20-MAY-2019
CHEMICAL BANK (200)
478792
071000013

Branch Code   200

| *Wire Number* | 2019052000031601 |
|---|---|

*Wire Amount*  USD 5,000.00  *Service Charge*  25.00
*Debit Amount*  USD 5,025.00  *Exchange Rate*
*Created By*  KAREN REINKI                (CrGd 4275)

*Product Code*  CTR

*Telegraphic Name*  JPMORGAN CHASE BANK, NA

*Name of Originator*  JONATHON LOUIS RAZO
*Taxpayer ID*
*Address of Originator*  1720 E MORRISON RD
LILLY MI 48175-8808

*Corresponding Institution*
(If Beneficiary's Bank is offline or Outside the United States)
*Beneficiary Institution*
(Final Destination Bank's Name & Address)

*Beneficiary's Name (Final Recipient of Funds)*
*Beneficiary's Address (required)*

KIMBERLY K HERVI
681 SHANEY CT UNIT A
CRESTHILL IL 60403
000000714849247

*Beneficiary's Account Number (required)*
*Other Beneficiary Information, Reference Information, or Payment Instructions*

### THIS TRANSACTION IS SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS

**1. Processing Payment Orders:** [text illegible]

**2. Confirmation of Executed Payment Orders:** [text illegible]

**3. Canceling or Amending Payment Orders:** [text illegible]

**4. Liability:** [text illegible]

**5. Foreign Payment Orders:** [text illegible]

B/D- 310035515

call back Jonathon          5-20-19

Authorized Signature (and Title, if applicable)    Date    Name of business or organization, if applicable

Authorized Signature (and Title, if applicable)    Date    Authorized Signature (and Title, if applicable)    Date

# CHEMICAL BANK (321)

## Funds Transfer / Payment Order Request

| | | |
|---|---|---|
| *Today's Date* | 22-MAY-2019 | |
| *Branch Name* | | |
| *Originator's Account* | | |
| *Online Institution's Routing Number (9 digits)* | | |

*Transfer Date*    22-MAY-2019

CHEMICAL BANK (200)

478792

071000013

*Branch Code*    **200**

| Wire Number | 201905220043763 | *Wire Amount* | USD 5,000.00 | *Service Charge* | 25.00 | Product Code | CTR |
|---|---|---|---|---|---|---|---|
| | | *Debit Amount* | USD 5,025.00 | *Exchange Rate* | | | |
| | | *Created By* | KAREN REINKE | | (CrGL 4275) | | |

*Telegraphic Name*    JPMORGAN CHASE BANK, NA

*Name of Originator*    JONATHON LOUIS RAZO

*Taxpayer ID*

*Address of Originator*    1720 E MORRISON RD
   UBLY MI 48475-8808

*Corresponding Institution*

*(If Beneficiary's Bank is offline or Outside the United States)*

*Beneficiary Institution*

*(Final Destination Bank's Name & Address)*

*Beneficiary's Name (Final Recipient of Funds)*    KIMBERLY K HERVI

*Beneficiary's Address (required)*    681 SHANLEY CT UNIT A
   CRESTHILL IL 60403

*Beneficiary's Account Number (required)*    000000714849247

*Other Beneficiary Information, Reference Information, or Payment Instructions*

**THIS TRANSACTION IS SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS**

**1. Processing Payment Orders:** We will use our best efforts to execute your Payment Order in the time received provided the Payment Order is received by us before our established cut-off time and is received on a day which is a business day for us, for the funds transfer or communications facility (communications facility) selected by us, and for any receiving financial institution. We will treat Payment Orders received by us after our cut-off time as received on our next business day. In our sole discretion, we may reject any Payment Order for any reason. We will notify you of any rejection orally, electronically, or in writing. We are not liable to you for the rejection and we are not obligated to pay you interest for the period before you receive the notice of rejection. You must provide us with complete and correct beneficiary information including the name of the beneficiary, the name and address of the beneficiary's financial institution, and the beneficiary's account number at that financial institution. Receiving financial institutions may credit a Payment Order on the basis of the account number provided, even if the account number does not correspond to the account of the intended beneficiary.

**2. Confirmation of Executed Payment Orders:** Provided that prior arrangements have been made, we will send you a notice of debit to your account and a copy of any Payment Order after we have executed your Payment Order. You agree to review these items and report any errors to us immediately.

**3. Canceling or Amending Payment Orders:** Any request to cancel this Payment Order must be made before we execute it. We will consider a request to amend a Payment Order as a request to cancel it. We will make a reasonable effort to act on a timely request to cancel a Payment Order but we are not bound by it. For any reason the Payment Order is not canceled.

**4. Liability:** We shall be responsible only for performing the services expressly provided for in this Funds Transfer Request, and shall be liable only for our gross negligence or willful misconduct in performing those services. We shall not be responsible for the acts or omissions of any other person, including without limitation any Federal Home Loan Bank, Federal Reserve Bank or communications facility, or any means by financial institution, and no such person shall be deemed our agent. In no event shall we be liable for any consequential, special, or penalties or damages which you may incur or suffer in connection with or arising out of this Funds Transfer Request. We shall be excused from failing to act or delay in acting if such failure or delay is caused by legal constraint, interruption of transmission or communication facilities, or other circumstances beyond our control. In addition, we shall be excused from failing to execute or delay in executing a Payment Order if such execution would result in our exceeding any limitations on our intraday net funds position established according to Federal Reserve Bank guidelines or in our otherwise violating any provision of any risk control program of the Federal Reserve Board or any rule or regulation of any other U.S. government regulatory authority.

**5. Foreign Payment Orders:** You agree that if you request that a Payment Order be sent to a foreign country, we may send the Payment Order in the currency of the receiving financial institution's country at our buying rate of exchange for U.S. dollar transfers. You agree that if for any reason the Payment Order is returned to us, you will accept the refund in U.S. dollars at the amount of the foreign money credited based on our current buying rate on the date of the refund, less any charges or expenses to us.

---

*Authorized Signature (and Title, if applicable)*     *Date*     *Name of business or organization, if applicable*

---

*Authorized Signature (and Title, if applicable)*     *Date*     *Authorized Signature (and Title, if applicable)*     *Date*

# CHEMICAL BANK (321)
## Funds Transfer / Payment Order Request

| | |
|---|---|
| *Today's Date* | 28-MAY-2019 |
| *Branch Name* | |
| *Originator's Account* | |

*Transfer Date* 28-MAY-2019

CHEMICAL BANK (200)    Branch Code    200
478792
026009593

*Wire Number* 201905280021123

USD 16,000.00 *Service Charge* 25.00
*Debit Amount* USD 16,025.00 *Exchange Rate*          *Product Code*   CTR
*Created By* KAREN REINKE                    (OrGL4235)

*Telephone Name* BANK OF AMERICA, N.A., NY

*Name of Originator* JONATHON LOUIS RAZO
*Taxpayer ID*
*Address of Originator* 1720 E MORRISON RD
UBLY MI 48475-8008

*Corresponding Institution*
(If Beneficiary's Bank is offline or Outside the United States)
*Beneficiary Institution*
(Final Destination Bank's Name & Address)

*Beneficiary's Name (Final Recipient of Funds)*
*Beneficiary's Address (required)*        KIMBERLY KAY HERVI
681 CHANEY CT UNIT A
CREST HILL IL 60403
*Beneficiary's Account Number (required)*    291028355850
*Other Beneficiary Information, Reference Information, or Payment Instructions*

### THIS TRANSACTION IS SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS

**1. Processing Payment Orders:** ...

**2. Confirmation of Executed Payment Orders:** ...

**3. Canceling or Amending Payment Orders:** ...

**4. Liability:** ...

**5. Foreign Payment Orders:** ...

8/0.300.5515

Callback Jonathon        5.28.19

| *Authorized Signature (and Title, if applicable)* | *Date* | *Name of business or organization, if applicable* |

| *Authorized Signature (and Title, if applicable)* | *Date* | *Authorized Signature (and Title, if applicable)* | *Date* |

# EXHIBIT 6-2

{00109535.DOCX }

**From:** Stock Pro <customerservicestockfxpro@gmail.com>
**Sent:** Saturday, June 8, 2019 12:13:10 PM
**To:** Jonathon Razo
**Subject:** Re: Trading account with $10,000 investments

Yes, it's a one time payment. After next trading, you will not pay for this documents again.

On Sat, Jun 8, 2019, 16:35 Jonathon Razo <razoslawnservice@hotmail.com> wrote:

> And could I get a time where I call and you guys have time to answer please
>
> Get Outlook for Android

---

**From:** Jonathon Razo
**Sent:** Saturday, June 8, 2019 9:41:33 AM
**To:** Stock Pro
**Subject:** Re: Trading account with $10,000 investments

One time even when I continue trading and withdrawing correct?

Get Outlook for Android

---

**From:** Stock Pro <customerservicestockfxpro@gmail.com>
**Sent:** Saturday, June 8, 2019 4:02:39 AM
**To:** Jonathon Razo
**Subject:** Re: Trading account with $10,000 investments

Hello Trader

Your withdrawal of $989,800 has been process and it is ready for transfer to your bank account.
Account details:
Chemical bank
Jonathon razo
Routing# 072410014
Account#000478792
Account holder address:
1720 east Morrison rd
Ubly mi 48475

However you are required to obtained two documents (withdrawal and broker permit ) before your funds
can be transferred to your bank details

https://outlook.live.com/mail/0/search/id/AQMkADAwATY3ZmYAZS11MDI2LTA0N...

# EXHIBIT 6-3

{00109535.DOCX }

## Re: Trading account with $10,000 investments

Stock Pro <customerservicestockfxpro@gmail.com>

Fri 6/21/2019 12:03 PM

To: Jonathon Razo <razoslawnservice@hotmail.com>

Below is the message we receive from the tax department and we must obey the law to avoid future sanctions.

The US federal bureau of Criminal Investigation has found Stockkpro Organization guilty of committing financial crimes as regards taxes. It has been discovered after many months of reviews and audit . It was also seen that customers have not been paying tax and filing their tax returns. This has made the company an offender of the law. Hence guilty of section 7,article B of the US Financial crimes law. They are owing $750,000,000 bill as tax in the past four months. In order not to face sanctions, they are requested to order all customers to pay their tax in full to enable the approval of their winnings in trading.

On Fri, Jun 21, 2019, 17:00 Stock Pro <customerservicestockfxpro@gmail.com> wrote:
There is a sudden disappointment as regard the transfer, the United state tax officials has ordered the stop of every out going profit making a statement that every customer that is receiving profit should pay their tax of the total profits and they have requested the 10% of tax for all customers... The company and every workers has been in a devastated mode ever since the shocking information that was the reason you have not been attended to

On Fri, Jun 21, 2019, 16:03 Jonathon Razo <razoslawnservice@hotmail.com> wrote:
Please can you get back with me as soon as you can

Get Outlook for Android

From: Jonathon Razo
Sent: Friday, June 21, 2019 10:59:58 AM
To: Stock Pro
Subject: Re: Trading account with $10,000 investments

Hello
Has my payment been sent out I cannot get ahold of Cadhilyer@gmail.com

Get Outlook for Android

From: Stock Pro <customerservicestockfxpro@gmail.com>
Sent: Monday, June 10, 2019 2:05:43 AM
To: Jonathon Razo
Subject: Re: Trading account with $10,000 investments

**From:** Stock Pro <customerservicestockfxpro@gmail.com>
**Sent:** Saturday, June 8, 2019 12:13:10 PM
**To:** Jonathon Razo
**Subject:** Re: Trading account with $10,000 investments

Yes, it's a one time payment. After next trading, you will not pay for this documents again.

On Sat, Jun 8, 2019, 16:35 Jonathon Razo <razoslawnservice@hotmail.com> wrote:

And could I get a time where I call and you guys have time to answer please

Get Outlook for Android

---

**From:** Jonathon Razo
**Sent:** Saturday, June 8, 2019 9:41:33 AM
**To:** Stock Pro
**Subject:** Re: Trading account with $10,000 investments

One time even when I continue trading and withdrawing correct?

Get Outlook for Android

---

**From:** Stock Pro <customerservicestockfxpro@gmail.com>
**Sent:** Saturday, June 8, 2019 4:02:39 AM
**To:** Jonathon Razo
**Subject:** Re: Trading account with $10,000 investments

Hello Trader

Your withdrawal of $989,800 has been process and it is ready for transfer to your bank account.
Account details:
Chemical bank
Jonathon razo
Routing# 072410014
Account#000478792
Account holder address:
1720 east Morrison rd
Ubly mi 48475

However you are required to obtained two documents (withdrawal and broker permit ) before your funds
can be transferred to your bank details

https://outlook.live.com/mail/0/search/id/AOMkADA...

On Sun, Jun 23, 2019, 05:16 Jonathon Razo <razoslawnservice@hotmail.com> wrote:
I'm just simply asking just trying to understand more I get they came in but I don't get how they can stop something that was in mid transition

Get Outlook for Android

---

**From:** Jonathon Razo
**Sent:** Sunday, June 23, 2019 12:14:47 AM
**To:** Cadwell Hillyer
**Subject:** Re: CBE Wire Instructions - CBB - Holding - 2019.pdf

Ok I understand but since mine was in transition does it not matter?

Get Outlook for Android

---

**From:** Cadwell Hillyer <cadhilyer@gmail.com>
**Sent:** Sunday, June 23, 2019 12:09:19 AM
**To:** Jonathon Razo
**Subject:** Re: CBE Wire Instructions - CBB - Holding - 2019.pdf

This is not the company's call and I want you to understand that please. It is Government tax officials we are talking about. To avoid future sanctions we advise all customers to obey and everything will be cleared.

On Sun, Jun 23, 2019, 04:59 Jonathon Razo <razoslawnservice@hotmail.com> wrote:
I understand others paid but I should be exempt because my proces happen before issues

Get Outlook for Android

---

**From:** Jonathon Razo
**Sent:** Saturday, June 22, 2019 11:56:52 PM
**To:** Cadwell Hillyer
**Subject:** Re: CBE Wire Instructions - CBB - Holding - 2019.pdf

So since I was before this new tax how come I can't receive

Get Outlook for Android

---

**From:** Cadwell Hillyer <cadhilyer@gmail.com>
**Sent:** Saturday, June 22, 2019 11:54:59 PM
**To:** Jonathon Razo
**Subject:** Re: CBE Wire Instructions - CBB - Holding - 2019.pdf

Was a mistake, I messaged you by replying all so the attachment was just an auto message for my reply all on this conversation because I like keeping records safe. I will always delete before sending next time.

On Sun, Jun 23, 2019, 04:52 Jonathon Razo <razoslawnservice@hotmail.com> wrote:
Why did you send me screenshot of what I sent you

https://outlook.live.com/mail/0/search/id/AOMkADA

# EXHIBIT 6-4

{00109535.DOCX }

NORTHSTAR BANK
833 S VAN DYKE RD
BAD AXE MI, 48413
(989) 269-8077

From account~0000000080042559
JONATHON L RAZO
1720 E MORRISON RD
UBLY MI 48475-8808



### WIRE TRANSFER REQUEST

The undersigned has requested a wire transfer
in the amount of $99,000.00
Beneficiary Account #:~674004281
Beneficiary Name:    CASA BELLA ESCROW SERVICES, INC
Beneficiary Address:

Receiving Bank Name:   CITZ BUS BK ONT
Receiving Bank RT #:   122234149
Beneficiary Bank Info:

A fee in the amount of $25.00
will be charged to the account listed above.

Customer Signature:_____

For Bank Use Only:
Employee Signature:_____

Wire Sequence #:_____

Wire requested in:  Fax [ ]    Phone [ ]    Email [ ]    Person [ ]

Are the funds:
Funds Collected    [ ]
Funds Uncollected  [ ]    Reason: Cash [ ]  LOC [ ]  Internal Transfer [ ]

Employee that performed call back (Different than receiver):_____

Wire Purpose:_____

Name of customer that call back was completed with:_____

_____

Phone Number used for call back:_____

Verify: Customer Name [ ]    Beneficiary [ ]    PIN # [ ]
        Wire Amount   [ ]    Beneficiary Account #    [ ]

PIN #_____

Send supporting documentation with the wire form to Ops.

# EXHIBIT 6-5

{00109535.DOCX }

# Ubly Police Department -- (989) 658-2433
## 2272 Bingham, Ubly, MI 48475

Incident No: **19-000248**

Status: **Closed**



| | | | |
|---|---|---|---|
| Date Reported: | **Tue 07/02/2019 15:30:00** | | |
| Dispatch Time: | **15:30:00** | Arrival Time: **15:30:00** | Clear Time: **16:30:00** |
| Officers: | **CLARK, MATTHEW** | | Detective: |
| Classification: | **FRAUD - FALSE PRETENSE/SWINDLE/CONF -- (26001)** | | |
| Location: | **1720 E. MORRISON RD, UBLY** | | Section / Nbh: **/** |
| Description: | **Fraud** | | Entered: **CLARK** |

**Complainant: (26001 FRAUD - FALSE PRETENSE/SWINDLE/CONF)**

DOB: ▮ Age: **25**

Ops:
Race: ▮ Sex: ▮ Ethnicity: ▮

**Victim: (26001 FRAUD - FALSE PRETENSE/SWINDLE/CONF)**

DOB: ▮ Age: **28**
Phone: ▮

Ops:
Race: ▮ Sex: ▮ Ethnicity: ▮

**Property:**

1) **Money**

| | | | |
|---|---|---|---|
| Item Num: **19-000248-001** | Class: **Money** | Value: **$200000.00** | |
| | Loss Type: **Stolen** | Qty: **2000** | |
| Type: **Currency/Money** | | | |
| Color: **GREEN** | | | |
| Currency Type: **U.S. Currency** | | Total Amount: **$ 200000.00** | |

2000 Hundred Dollar Bills  $  200000.00

| INITIAL INCIDENT | Reporting Officer: CLARK, MATTHEW | 07/22/19 |
|---|---|---|

## INFORMATION:

At the above date and time, I was told by Sheriff Hanson to make contact with Tiffany Razo in reference to a fraud complaint. His office received the call and forwarded the information to this officer.

## ARRIVAL:

When I arrived, I made contact with Tiffany outside of her residence. She said her husband Jonathon Razo invests into the stock market. He recently won approximately $2,189,800 US Dollars through stockRX.com. He was not available to talk to his officer because he was recovering from a severe concussion. The agent they have been talking to is Hyler from stockFX.com. Jon sent Hyler the tax to be collected on his winnings. Once he did so via wire transfer, Hyler asked for more "tax" money before he would release the winning's. Jon did not send anymore money to Hyler because he had already paid for the tax in full. Jon went down to Detroit, MI to follow up on his stock investment, but was mugged.

I took photographs of the text messages between Jon and Hyler. See attached. Tiffany was going to work on getting bank statements and wire transfer statements to this officer. I also advised Tiffany once the paperwork is gathered that this complaint will be transferred to the FBI. She said ok.

**STATUS:** OPEN

| NARRATIVE 1 (Supplement 1) | Reporting Officer: CLARK, MATTHEW | 08/27/19 |
|---|---|---|

DATE: 8/23/2019
R/O Matthew Clark

**INFORMATION:**

I met with Tiffany and Jon at their residence. Jon explained he went with a private company who deals with situations like his. He did not need this officer's assistance anymore. I told him if he needs my help, to contact me. He said ok.

**STATUS:** CLOSED

| NARRATIVE 2 (Supplement 2) | Reporting Officer: CLARK, MATTHEW | 02/03/20 |
|---|---|---|

Date: 12/3/2019
R/O Matthew Clark

**INFORMATION:**

On the above date, I received copies of the conversation between Jonathan and stock pro (stockprofx.com) regarding a previous US Federal bureau of criminal investigations tax sactions.

**EMAIL OVERVIEW:**

On Tuesday, May 28,2019, Jonathan made a wire transfer that went to a Kimberly Kay Heriv in Crest Hill, IL. He said the money should have never went to a name. The money was suppose to go to Stock Pro.

On Saturday, June 8, 2019, stock pro emails Jonathan that his withdraw was ready for transfer in the amount of $989,800. Also, included is Jonathan's banking details.

On Sunday, June 23, 2019, Cadwell Hillyer told Jonathan, "This is not the company's call and I want you to understand that please. It is Government tax officials we are talking about. To avoid future sanctions we advise all customers to obey and everything will be closed."

Further in the emails, Jonathan and Cadwell exchange emails regarding paying tax on Jonathan's investment. Cadwell scams Jonathon out of approximately 200,000 US dollars. Also attached is copies of the wire transfers made to Kimberly Heriv. See attached documentation for further information.

**STATUS:** OPEN

| NARRATIVE 3 (Supplement 3) | Reporting Officer: CLARK, MATTHEW | 02/03/20 |
|---|---|---|

Date: 1/31/2020

R/O Matthew Clark

## INFORMATION:

On the above date, I received Jonathan's statement at the Ubly Police Department. See attached document.

## STATUS: OPEN

| NARRATIVE 4 (Supplement 4) | Reporting Officer: CLARK, MATTHEW | 02/19/20 |

Date: 2/19/2020 @ 0925 hrs
R/O Matthew Clark

## INFORMATION:

On the above date and time, I sent a text message to Jonathan from the Ubly PD phone to have him call this officer. I had called him prior, but his voicemail box was full. He then contacted this officer back via telephone.

## TALK WITH JONATHAN:

I asked Jonathan how much he sent that was his own personal money and how much was part of the loan. He said $60,000 was his own money he had sitting aside and $120,000 was a loan from Northstar Bank. I asked him to give this officer the loan details on the loan from Northstar Bank. He said he will work on it today and have the paperwork to this officer by 2/20/2020. I said ok.

## STATUS: OPEN

| NARRATIVE 5 (Supplement 5) | Reporting Officer: CLARK, MATTHEW | 03/17/20 |

Date: 3/14/2020
R/O Matthew Clark

## INFORMATION:

On the above date, I met with Jonathan at the Ubly Police Department. He gave this officer the loan paperwork from Northstar Bank. See attached.

## STATUS: OPEN

| NARRATIVE 6 (Supplement 6) | Reporting Officer: CLARK, MATTHEW | 03/17/20 |

Date: 3/17/2020
R/O Matthew Clark

## INFORMATION:

On the above date, I contacted the FBI Detroit office. I attempted to talk to a real person, but for a internet scam the report needs to be made at www.ic3.gov. I then contact Jonathan and advised him to go to that site. He said ok. He will also note that this report is available to them if they request it.

## STATUS: CLOSED

21-02015-dob    Doc 29    Filed 10/01/21    Entered 10/01/21 21:06:51    Page 82 of 132

**Images:**

null



null



null



null



21-02015-dob   Doc 29   Filed 10/01/21   Entered 10/01/21 21:06:51   Page 83 of 132

**Images:**

null



null



null



null



Reported By: 21-02015-dob    Doc 29    Filed 10/01/21    Reviewed By: Entered 10/01/21 21:06:51    Page 84 of 132    Date Printed: 09/24/2021

Page   5  of  7

**Images:**

null



null



null



null



21-02015-dob    Doc 29    Filed 10/01/21    Entered 10/01/21 21:06:51    Page 85 of 132

**Images:**
**null**



21-02015-dob   Doc 29   Filed 10/01/21   Entered 10/01/21 21:06:51   Page 86 of 132

## Re: Trading account with $10,000 investments

Stock Pro <customerservicestockfxpro@gmail.com>

Fri 6/21/2019 12:03 PM

To: Jonathon Razo <razoslawnservice@hotmail.com>

Below is the message we receive from the tax department and we must obey the law to avoid future sanctions.

The US federal bureau of Criminal Investigation has found Stockkpro Organization guilty of committing financial crimes as regards taxes. It has been discovered after many months of reviews and audit . It was also seen that customers have not been paying tax and filing their tax returns. This has made the company an offender of the law. Hence guilty of section 7,article B of the US Financial crimes law. They are owing $750,000,000 bill as tax in the past four months. In order not to face sanctions, they are requested to order all customers to pay their tax in full to enable the approval of their winnings in trading.

On Fri, Jun 21, 2019, 17:00 Stock Pro <customerservicestockfxpro@gmail.com> wrote:
There is a sudden disappointment as regard the transfer, the United state tax officials has ordered the stop of every out going profit making a statement that every customer that is receiving profit should pay their tax of the total profits and they have requested the 10% of tax for all customers... The company and every workers has been in a devastated mode ever since the shocking information that was the reason you have not been attended to

On Fri, Jun 21, 2019, 16:03 Jonathon Razo <razoslawnservice@hotmail.com> wrote:
Please can you get back with me as soon as you can

Get Outlook for Android

---

**From:** Jonathon Razo
**Sent:** Friday, June 21, 2019 10:59:58 AM
**To:** Stock Pro
**Subject:** Re: Trading account with $10,000 investments

Hello
Has my payment been sent out I cannot get ahold of Cadhilyer@gmail.com

Get Outlook for Android

---

**From:** Stock Pro <customerservicestockfxpro@gmail.com>
**Sent:** Monday, June 10, 2019 2:05:43 AM
**To:** Jonathon Razo
**Subject:** Re: Trading account with $10,000 investments

**From:** Stock Pro <<u>customerservicestockfxpro@gmail.com</u>>
**Sent:** Saturday, June 8, 2019 12:13:10 PM
**To:** Jonathon Razo
**Subject:** Re: Trading account with $10,000 investments

Yes, it's a one time payment. After next trading, you will not pay for this documents again.

On Sat, Jun 8, 2019, 16:35 Jonathon Razo <<u>razoslawnservice@hotmail.com</u>> wrote:

And could I get a time where I call and you guys have time to answer please

Get <u>Outlook for Android</u>

---

**From:** Jonathon Razo
**Sent:** Saturday, June 8, 2019 9:41:33 AM
**To:** Stock Pro
**Subject:** Re: Trading account with $10,000 investments

One time even when I continue trading and withdrawing correct?

Get <u>Outlook for Android</u>

---

**From:** Stock Pro <<u>customerservicestockfxpro@gmail.com</u>>
**Sent:** Saturday, June 8, 2019 4:02:39 AM
**To:** Jonathon Razo
**Subject:** Re: Trading account with $10,000 investments

Hello Trader

Your withdrawal of $989,800 has been process and it is ready for transfer to your bank account.
Account details:
Chemical bank
Jonathon razo
Routing# 072410014
Account#000478792
Account holder address:
1720 east Morrison rd
Ubly mi 48475

However you are required to obtained two documents (withdrawal and broker permit ) before your funds
can be transferred to your bank details

https://outlook.live.com/mail/0/search/id/AOMkADAwATY3Zm

On Sun, Jun 23, 2019, 05:16 Jonathon Razo <razoslawnservice@hotmail.com> wrote:
I'm just simply asking just trying to understand more I get they came in but I don't get how they can stop something that was in mid transition

Get Outlook for Android

---

**From:** Jonathon Razo
**Sent:** Sunday, June 23, 2019 12:14:47 AM
**To:** Cadwell Hillyer
**Subject:** Re: CBE Wire Instructions - CBB - Holding - 2019.pdf

Ok I understand but since mine was in transition does it not matter?

Get Outlook for Android

---

**From:** Cadwell Hillyer <cadhilyer@gmail.com>
**Sent:** Sunday, June 23, 2019 12:09:19 AM
**To:** Jonathon Razo
**Subject:** Re: CBE Wire Instructions - CBB - Holding - 2019.pdf

This is not the company's call and I want you to understand that please. It is Government tax officials we are talking about. To avoid future sanctions we advise all customers to obey and everything will be cleared.

On Sun, Jun 23, 2019, 04:59 Jonathon Razo <razoslawnservice@hotmail.com> wrote:
I understand others paid but I should be exempt because my proces happen before issues

Get Outlook for Android

---

**From:** Jonathon Razo
**Sent:** Saturday, June 22, 2019 11:56:52 PM
**To:** Cadwell Hillyer
**Subject:** Re: CBE Wire Instructions - CBB - Holding - 2019.pdf

So since I was before this new tax how come I can't receive

Get Outlook for Android

---

**From:** Cadwell Hillyer <cadhilyer@gmail.com>
**Sent:** Saturday, June 22, 2019 11:54:59 PM
**To:** Jonathon Razo
**Subject:** Re: CBE Wire Instructions - CBB - Holding - 2019.pdf

Was a mistake, I messaged you by replying all so the attachment was just an auto message for my reply all on this conversation because I like keeping records safe. I will always delete before sending next time.

On Sun, Jun 23, 2019, 04:52 Jonathon Razo <razoslawnservice@hotmail.com> wrote:
Why did you send me screenshot of what I sent you

We are making sure the account is clear to enable smooth transaction

On Tue, May 28, 2019, 13:34 Jonathon Razo
<razoslawnservice@hotmail.com> wrote:
Ok thank you,...why couldn't have I got this info sooner? Why the delay you had on file? Just asking

Get Outlook for Android

---

**From:** Stock Pro
<customerservicestockfxpro@gmail.com>
**Sent:** Tuesday, May 28, 2019 8:26:57 AM
**To:** Jonathon Razo
**Subject:** Re: Trading account with $10,000 investments

Kindly make payment to this details and forward receipt of payment for confirmation.

BOA
Checking: 291028355850
Standard Routing:     081904808
WT routing 026009593
Full account name
Kimberly Kay Hervi
Address:
681 Chaney Ct Unit A
Crest Hill IL 60403

On Tue, May 28, 2019, 13:20 Jonathon Razo
<razoslawnservice@hotmail.com> wrote:
I'm ready for the one 200k account upgrade still waiting on the details

Get Outlook for Android

*Never should've went to a name. Suppose to be company name*

---

**From:** Jonathon Razo
**Sent:** Tuesday, May 28, 2019 8:16:43 AM
**To:** Stock Pro
**Subject:** Re: Trading account with $10,000 investments

**Re: Trading account with $10,000 investments**

Stock Pro <customerservicestockfxpro@gmail.com>

Mon 6/10/2019 2:06 AM

To: Jonathon Razo <razoslawnservice@hotmail.com>

Cadhilyer@gmail.com

On Mon, Jun 10, 2019, 03:13 Jonathon Razo <razoslawnservice@hotmail.com> wrote:
Is there also an email for that number
Send your Trading username and Full name via text message to (409-683-3624) to get
account details where you will remit payment
Email to also contact?

Get Outlook for Android

---

**From:** Jonathon Razo
**Sent:** Saturday, June 8, 2019 6:21:06 PM
**To:** Stock Pro
**Subject:** Re: Trading account with $10,000 investments

Ok thank you

Get Outlook for Android

---

**From:** Stock Pro <customerservicestockfxpro@gmail.com>
**Sent:** Saturday, June 8, 2019 5:26:46 PM
**To:** Jonathon Razo
**Subject:** Re: Trading account with $10,000 investments

The upgrade for the unlocking process cost $7000 for your other account but the fee
which includes withdrawal and broker permit is not known yet because it's not a fix
charges it can only be generated after trade is complete.

On Sat, Jun 8, 2019, 20:35 Jonathon Razo <razoslawnservice@hotmail.com> wrote:
How much is it to upgrade my other account to get unlocked and how much for
withdrawal fees the one with 65k

Get Outlook for Android

---

**From:** Jonathon Razo
**Sent:** Saturday, June 8, 2019 12:56:42 PM
**To:** Stock Pro
**Subject:** Re: Trading account with $10,000 investments

Below is the breakdown of the cost of both documents
( Withdrawal permit) $10,000
(Broker permit )$35,000
(Total) $45,000

Send your Trading username and Full name via text message to (409-683-3624) to get account details where you will remit payment

Caldwell
Hillyar

make the payment via bank wire to the company agent details that will be provided and thereafter send a scanned copy of the receipt of transfer for confirmation purpose.

PLEASE NOTE : you are only making payment once for the documents.

THANKS.

On Fri, Jun 7, 2019, 20:46 Jonathon Razo <razoslawnservice@hotmail.com> wrote:

Will transfer happen today? Just wondering

Get Outlook for Android

**From:** Jonathon Razo
**Sent:** Friday, June 7, 2019 1:01:56 PM
**To:** Stock Pro
**Subject:** Re: Trading account with $10,000 investments

Ok thank you

Get Outlook for Android

**From:** Stock Pro <customerservicestockfxpro@gmail.com>
**Sent:** Friday, June 7, 2019 11:31:36 AM
**To:** Jonathon Razo
**Subject:** Re: Trading account with $10,000 investments

Once paperwork is complete, we will message you immediately.

On Fri, Jun 7, 2019, 14:54 Jonathon Razo <razoslawnservice@hotmail.com> wrote:

**Re:Notice...**

**Stockfxpro Success Team !!! <support@stockfxpro.com>**
Sun 8/11/2019 3:51 AM

To: Jonathon Razo <razoslawnservice@hotmail.com>

Hello Trader, please be inform that your live portfolio account is fully secured under the protection of Mr Caldwell Hilyer, your said profit is intact in your life portfolio account and was not tempered with at any time or whatsoever. Note that the tax payment for the automated trading sections is the only challenge you have to do away with and therefore receive your total profit without further delay.


Best regards.

On Aug 11, 2019 12:22 AM, Jonathon Razo <razoslawnservice@hotmail.com> wrote:
  Have you recieved my profits from Mr Caldwell hyler?

From: Stockfxpro Success Team !!! <support@stockfxpro.com>
Sent: Wednesday, July 31, 2019 12:47:57 AM
To: Jonathon Razo <razoslawnservice@hotmail.com>
Subject: Re: Re:Notice.

Dear esteemed customer,

Please be guided, you never made payment directly into the company agent's account, as all your payment was received through your account manager, so we are trying to retrieve your profits from Him.

Give us a little time, as we will definitely serve you better.

Best Regards

On Jul 31, 2019 05:41, Jonathon Razo <razoslawnservice@hotmail.com> wrote:
  So CNBC or Twitter or facebook is fine with all messages? Ok thank you

From: Stockfxpro Success Team !!! <support@stockfxpro.com>
Sent: Tuesday, July 30, 2019 4:40:58 PM
To: Jonathon Razo <razoslawnservice@hotmail.com>
Subject: Re:Notice.

Hello Trader,

We are deeply sorry to learn that your profits is yet to be transferred to your bank account as supposed.

There may be some reasons holding your profits back still, but we want to assure you that we will do all we can to get you what's yours..
As our customers success remains our Utmost priority.

Best Regards

On Jul 30, 2019 6:14 PM, Jonathon Razo <razoslawnservice@hotmail.com> wrote:
I have not received my withdrawal and you guys have over 145k from me the IRS has no such dealing with you for taxes ....so unless you want me to post all my accounts manager messages and every one of your messages you sent me on social media I want my withdrawal this week
Broker permit
Withdrawal fee
Tax
I paid all of these
Total of 989k should be sent to me this week
Via wire or I will post everything from bad reviews to FULL on media attention facebook,twitter, I will call CNBC if i have too

**From:** Jonathon Razo
**Sent:** Tuesday, June 25, 2019 2:55:24 AM
**To:** Cadwell Hillyer
**Subject:** Re: CBE Wire Instructions - CBB - Holding - 2019.pdf

Ok I keep me posted even if I just get something and how come I never recieved a receipt for the 45k broker and withdrawal permit

Get Outlook for Android

---

**From:** Cadwell Hillyer <cadhilyer@gmail.com>
**Sent:** Tuesday, June 25, 2019 2:49:01 AM
**To:** Jonathon Razo
**Subject:** Re: CBE Wire Instructions - CBB - Holding - 2019.pdf

The management has not responded back to me as per request of sending the original letter to enable me forward to you. I don't know why.
They only called all senior staff to a close door meeting and explain the situation to us before showing it on the screen

On Tue, Jun 25, 2019, 03:02 Jonathon Razo <razoslawnservice@hotmail.com> wrote:
I have not received that email either

Get Outlook for Android

---

**From:** Jonathon Razo
**Sent:** Monday, June 24, 2019 8:03:32 AM
**To:** Cadwell Hillyer
**Subject:** Re: CBE Wire Instructions - CBB - Holding - 2019.pdf

Hello I have not received email?

Get Outlook for Android

---

**From:** Jonathon Razo
**Sent:** Monday, June 24, 2019 7:59:08 AM
**To:** Cadwell Hillyer
**Subject:** Re: CBE Wire Instructions - CBB - Holding - 2019.pdf

Are you active?

Get Outlook for Android

---

**From:** Jonathon Razo
**Sent:** Monday, June 24, 2019 7:35:07 AM
**To:** Cadwell Hillyer
**Subject:** Re: CBE Wire Instructions - CBB - Holding - 2019.pdf

# CHEMICAL BANK (321)
## Funds Transfer / Payment Order Request

| | | | |
|---|---|---|---|
| Today's Date | 20-MAY-2019 | | |
| Branch Name | | Transfer Date | 20-MAY-2019 |
| Originator's Account + | | CHEMICAL BANK (200) | Branch Code | 200 |
| Online Institution's Routing Number (9 digits) | | 478792 | |
| | | 071000013 | |

| | | |
|---|---|---|
| Wire Number | 2019052000316014 | Wire Amount | USD 5,000.00 Service Charge | 25.00 |
| | | Debit Amount | USD 5,025.00 Exchange Rate |
| | | Created By | KAREN REINKI | (Cr Of 4275) |

Telegraphic Name JPMORGAN CHASE BANK, NA

| | |
|---|---|
| Name of Originator | JONATHON LOUIS RAZO |
| Taxpayer ID | |
| Address of Originator | 1720 E MORRISON RD |
| | HELY MI 48475-8808 |

Corresponding Institution
(If Beneficiary's Bank is offline or Outside the United States)

Beneficiary Institution
(Final Destination Bank's Name & Address)

Beneficiary's Name (Final Recipient of Funds)
Beneficiary's Address (required)

KIMBERLY K HERVI
681 SHANEY CT UNIT A
CRESTHILL IL 60403

Beneficiary's Account Number (required)     000000714849247

Other Beneficiary Information, Reference Information, or Payment Instructions

## THIS TRANSACTION IS SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS

**1. Processing Payment Orders:** ...

**2. Confirmation of Executed Payment Orders:** ...

**3. Canceling or Amending Payment Orders:** ...

**4. Liability:** ...

**5. Foreign Payment Orders:** ...

B/D. 310455715

call back Jonathon          5.20/19

| | | |
|---|---|---|
| Authorized Signature (and Title, if applicable) | Date | Name of business or organization, if applicable |

| | | |
|---|---|---|
| Authorized Signature (and Title, if applicable) | Date | Authorized Signature (and Title, if applicable) | Date |

# CHEMICAL BANK (321)
## Funds Transfer / Payment Order Request

| | | | | |
|---|---|---|---|---|
| *Today's Date* | 22-MAY-2019 | *Transfer Date* | 22-MAY-2019 | |
| *Branch Name* | | CHEMICAL BANK (200) | | *Branch Code* 200 |
| *Originator's Account* | | 478792 | | |
| *Online Institution's Routing Number (9 digits)* | | 071000013 | | |

| | | | |
|---|---|---|---|
| *Wire Number* 201905220043763 | *Wire Amount* | USD 5,000.00 *Service Charge* | 25.00 |
| | *Debit Amount* | USD 5,025.00 *Exchange Rate* | *Product Code* CTR |
| | *Created By* | KAREN REINKE | (CrGL 4275) |

*Telegraphic Name* JPMORGAN CHASE BANK, NA

*Name of Originator* JONATHON LOUIS RAZO

*Taxpayer ID*

*Address of Originator* 1720 E MORRISON RD
UBLY MI 48475-8808

*Corresponding Institution*
(If Beneficiary's Bank is offline or Outside the United States)

*Beneficiary Institution*
(Final Destination Bank's Name & Address)

*Beneficiary's Name (Final Recipient of Funds)* KIMBERLY K HERVI
*Beneficiary's Address (required)* 681 SHANLEY CT UNIT A
CRESTHILL IL 60403

*Beneficiary's Account Number (required)* 00000714849247

*Other Beneficiary Information, Reference Information, or Payment Instructions*

### THIS TRANSACTION IS SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS

**1. Processing Payment Orders:** ...

**2. Confirmation of Executed Payment Orders:** ...

**3. Canceling or Amending Payment Orders:** ...

**4. Liability:** ...

**5. Foreign Payment Orders:** ...

8/0 200-5515

Call back Jonathon          5-22-19

Authorized Signature (and Title, if applicable)     Date     Name of business or organization, if applicable

Authorized Signature (and Title, if applicable)     Date     Authorized Signature (and Title, if applicable)     Date

# CHEMICAL BANK (321)
## Funds Transfer / Payment Order Request

*Today's Date*    28-MAY-2019      *Transfer Date*  28-MAY-2019

*Branch Name*                 CHEMICAL BANK (200)              Branch Code    200

*Originator's Account*          478792

*Online Institution's Routing Number (9 digits)*   026009593

*Wire Number*  201905280021123    *Wire Amount*  USD 16,000.00 *Service Charge*  25.00    *Product Code*  CTR

                                  *Debit Amount*  USD 16,025.00 *Exchange Rate*

                                  *Created By*  KAREN REINKE        (OrGL4235)

*Telephone Name*  BANK OF AMERICA, N.A., NY

*Name of Originator*      JONATHON LOUIS RAZO

*Taxpayer ID*

*Address of Originator*    1720 E MORRISON RD
                           UBLY MI 48475-8008

*Corresponding Institution*

*(If Beneficiary's Bank is offline or Outside the United States)*

*Beneficiary Institution*

*(Final Destination Bank's Name & Address)*

*Beneficiary's Name (Final Recipient of Funds)*      KIMBERLY KAY HERVI

*Beneficiary's Address (required)*              681 CHANEY CT UNIT A
                                CREST HILL IL 60403

*Beneficiary's Account Number (required)*    291028355850

*Other Beneficiary Information, Reference Information, or Payment Instructions*

### THIS TRANSACTION IS SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS

**1. Processing Payment Orders:** We will use our best efforts to execute your Payment Order on the date received provided the Payment Order is received by us before our anticipated cutoff time and is received on a day which is a business day for us, for the funds transfer or communications facility ("communications facility") selected by us, and for any receiving financial institution. We will treat Payment Orders received by us after our cutoff time as received on our next business day. In our sole discretion, we may reject any Payment Order for any reason. We will notify you of any rejection orally, electronically, or in writing. We are not liable to you for the rejection, and we are not obligated to pay you interest for the period before you receive the notice of rejection. You must provide us with complete and correct beneficiary information including the name of the beneficiary, the name and address of the beneficiary's financial institution and the beneficiary's account number at that financial institution. Receiving financial institutions may credit a Payment Order on the basis of the account number provided, even if the account number does not correspond to an account of the intended beneficiary.

**2. Confirmation of Executed Payment Orders:** Provided that prior arrangements have been made, we will send you a series of debits to your account and a class of your Payment Order after we have executed your Payment Order. You agree to review these items and report any errors to us immediately.

**3. Canceling or Amending Payment Orders:** Any request to cancel this Payment Order must be made before we execute it. We will consider a request to amend a Payment Order as a request to cancel it. We will make a reasonable effort to act on a timely request to cancel a Payment Order but we will not be liable if for any reason this Payment Order is not canceled.

**4. Liability:** We shall be responsible only for performing the services expressly provided for in this Funds Transfer Request and shall be liable only for our gross negligence or willful misconduct in performing those services. We shall not be responsible for the acts or omissions of any other person, including without limitation any Federal Reserve Bank, Federal Reserve Bank or communication facility, or any receiving financial institution, and no such person shall be deemed our agent, in no event shall we be liable for any consequential, special, punitive or indirect loss or damage which you may incur or suffer in connection with or arising out of this Funds Transfer Request. We shall be excused from failing to act or delay in acting if such failure or delay is caused by legal constraint, interruption of transmission or communication facilities, conflicts between the time of (i) execution of a Payment Order and the deadlines of any Federal Reserve Bank or communications facility employed hereunder, war, labor dispute or job action, emergency conditions, acts of God, or other circumstances beyond our control, in addition, we shall be excused from failing to execute or delay in executing a Payment Order if such execution would result in our exceeding any limitations on our intra-day net funds position established according to Federal Reserve Board guidelines or in our otherwise violating any provision of any risk control program of the Federal Reserve Board or any rule or regulation of any other U.S. government regulatory authority.

**5. Foreign Payment Orders:** You agree that if you request that a Payment Order be sent to a foreign country, we may send the Payment Order in the currency of the receiving financial institution's country at our buying rate of exchange for U.S. dollar transfers. You agree that, if for any reason the Payment Order remained to us or you will accept the refund in U.S. dollars of the amount of the foreign money credit, based on our current buying rate on the date of the refund, less any charges or expenses to us.

8/0.300.5515

Callback Jnathan     5.28.19

*Authorized Signature (and Title, if applicable)*    Date    *Name of business or organization, if applicable*

*Authorized Signature (and Title, if applicable)*    Date    *Authorized Signature (and Title, if applicable)*    Date



# United States of America

## Texas City

### The International Business Companies (IBC) Act 1996

and

IN THE MATTER OF THE REGISTRATION OF

## STOCKFXPRO FOREX ORGANIZATION

## Certificate of Good Standing

*I do hereby certify, that the subject company named above appears on the Register of International Companies maintained by the Registrar of Companies and that all fees, license fees and penalties due and payable have been paid.*

*I further hereby certify, that the subject Company named above has not submitted to the Registrar of Companies, Articles of merger or Consolidation or Arrangement that above not yet become effective nor is the Company in the process of being wound up and dissolved and no proceedings to strike the name of the Company off the Register have been instituted*

Given under my hand seal
this 25th day of **June** 2010



Caldwell Hayter
Registrar Of Company
United State Of America

6157S

United State of America

INTERNATIONAL BUSINESS COMPANIES Act, 1994

(Act 24 of 1994)



*Certificate of Incorporation*

THIS IS TO CERTIFY that, all requirements in respect of incorporation under the International Business Companies Act, 1994 having satisfied.

## STOCKFXPRO FOREX ORGANIZATION

is incorporated in the United State of America as an international Business Company

This **15th** Day of **August** **2010**

Given at Texas, USA

James Lanko

REGISTRAR OF INTERNATIONAL BUSINESS COMPANIES

Certificate No: **0357228**

NORTHSTAR BANK
833 S VAN DYKE RD
BAD AXE MI, 48413
(989) 269-8077

From account~0000000080042559
JONATHON L RAZO
1720 E MORRISON RD
UBLY MI 48475-8808



### WIRE TRANSFER REQUEST

The undersigned has requested a wire transfer
in the amount of $99,000.00
Beneficiary Account #:~674004281
Beneficiary Name:    CASA BELLA ESCROW SERVICES, INC
Beneficiary Address:

Receiving Bank Name:   CITZ BUS BK ONT
Receiving Bank RT #:   122234149
Beneficiary Bank Info:

A fee in the amount of $25.00
will be charged to the account listed above.

Customer Signature:_____

For Bank Use Only:
Employee Signature:_____

Wire Sequence #:_____

Wire requested in:  Fax [ ]     Phone [ ]     Email [ ]     Person [ ]

Are the funds:
Funds Collected    [ ]
Funds Uncollected  [ ]    Reason: Cash [ ]  LOC [ ]  Internal Transfer [ ]

Employee that performed call back (Different than receiver):_____

Wire Purpose:_____

Name of customer that call back was completed with:

_____

Phone Number used for call back:_____

Verify: Customer Name [ ]     Beneficiary [ ]     PIN # [ ]
        Wire Amount   [ ]     Beneficiary Account #      [ ]

PIN #_____

Send supporting documentation with the wire form to Ops.

Twitter handle @Jules29996707 was also a vicitim of being scammed by the same company stockfxpro.com she is trying to work with other fake retrieval companies but has just about 200,000 usd invested also she will not give me her info so you will have to do the check with twitter

Caldwell hillyer company registrar fake name who took the two btc transfers of 99k and 45k

Caldwell hillyer 430 203 1671     409 683 3624

nick taddeo also 409 777 1685 both txt and telegram

lola martinez 267 527 6915 and 424 277 0863 just whats app

willam 646 396 6267

My name is jonathon louis Razo my phone number is 810 300 5515

@kylewdenis3 is the twitter handle kyle used and i cant find his california phone number he called me on

kyle denis took took the bank wires for the deposit down i started to invest in the company back in june of 2019 and they make you feel like they are teaching you and want to help you and your family which i look now and feel really nieve and dumb for doing so,lola, william, caldwell, nick, and kyle all fake names work together. caldwell still contacts me and if he was messaged by any other phone number he would answer. the have close to 200,000 of total money i have sent and i have all reciepts of wires and everything . it started with the 10,000 deposit and then the other wires to total 26,000 and then when it came time to withdraw is when i sent the 99k and 45k through the wires that went to an escrow company and thats where the bitcoin was tranfered to my bitcoin wallet through localbitcoin.com which caldwell was logged in he said to ensure smooth transaction and after awhile i realized  this was a scam when it was too late the wanted more money to pay tax on the profits from the forex trade.they say they are located in texas and caldwell has a business in oklahoma city.i knw im not the ony one scammed by them and would just like to get my moeny back and stop them from getting anyone else.

thank you for your time in this matter

Jan 31st 2020

Jonathon Razo

1

# EXHIBIT 6-6

{00109535.DOCX }

# EXHIBIT 6-7

{00109535.DOCX }

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF HURON

NORTHSTAR BANK,

      Plaintiff,

vs.

JOHNATHON L. RAZO, an individual,

      Defendant.

Case No. 20-105695- CK
Hon. Gerald M. Prill

_____/

Zachary J. Eskau (P68643)
175 Thompson Road
Bad Axe, MI 48413
(989) 269-6272
*zeskau@geminigroup.net*
Attorney for Plaintiff

_____/

## **AFFIDAVIT OF LAURA SWARTZENDRUBER**

STATE OF MICHIGAN    )
                    )SS:
COUNTY OF HURON     )

      LAURA SWARTZENDRUBER, being first duly sworn, deposes and states as follows:

    1.     I am employed by Northstar Bank and I have personal knowledge of the facts set forth in the Affidavit and I am competent to testify as to the same.

    2.     As of July 7, 2020, Defendant Johnathon L. Razo was indebted to Northstar Bank, in the following amounts:

| Loan Number | Principal | Interest | Total |
|-------------|-----------|----------|-------|
| #6154793 | 123,225.73 | 6,252.70 | $129,478.43 |
| #6166227 | 15,000.00 | 617.12 | $15,617.12 |

    3.     The amounts referenced above do not include interest, costs and attorney fees accruing and/or incurred after July 7, 2020.

1

4. The value of the collateral pledged to support Loan #6154793 and Loan #616227 is $1,000.00 based upon information available at he time of making this affidavit.

5. The amount due is accurate to the best of my knowledge, information and belief.

6. The records attached to this affidavit were made at or near the time of the events they record, were made by or from information transmitted by a person with knowledge of the events they record, were kept in the ordinary course of Northstar Bank's business, and it is the practice of Northstar Bank to make such records.

7. This Affidavit is made in support of Northstar Bank's Motion for Summary Disposition in this matter.

Further deponent sayeth not.

Laura Swartzendruber

Subscribed and sworn to before me
this 5th day of October, 2020.

Chasity Perzanowski
, Notary Public
Tuscola County, Michigan
My Commission Expires: 9·15·2023
Acting in the County of Huron

CHASITY PERZANOWSKI
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF TUSCOLA
My Commission Expires September 15, 2023
Acting in the County of Huron

2

# EXHIBIT 6-8

{00109535.DOCX }

Case 20 - 105695 - CK

Defendants' Answer to Complaint

I Jonathan Ruzo would like to turn over
the Collateral of the toolbox and plow. I would
like to enter an affordable monthly payment plan and
will reach out to Zachary J Eskau to try
to come up with an agreement

AUG - 5 2020

# EXHIBIT 6-9

{00109535.DOCX }

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

In Re:

JONATHON L. RAZO,                         Chapter 7

                                         Case No.  21-20154-dob

     Debtor.                           Hon. Daniel Opperman

_____/

## STIPULATED ORDER TO LIFT
## <u>THE AUTOMATIC STAY AS TO NORTHSTAR BANK</u>

Northstar Bank, having a first priority lien interest in the Chapter 7 Debtor's personal property commonly known as a toolbox with serial number 6391205A, tools, and a plow with serial number BC022827 (subsequently changed by Debtor but delivered/surrendered to Creditor by Debtor) ("Property"); the Debtor having filed a Chapter 7 bankruptcy anticipating no return by unsecured Creditor, and the Property not being worth more than the amount due and owing from Debtor to Northstar Bank;

**IT IS HEREBY ORDERED** that the Automatic Stay imposed by 11 USC §362 of the Bankruptcy code is lifted with respect to Northstar Bank as it pertains to the Property.

**IT IS FURTHER ORDERED** that the provisions of Fed.Bankr.P. 4001(a)(3) are waived and this order shall be effective immediately upon entry.  This order shall remain in effect, notwithstanding the conversion of this bankruptcy case to a case under any other Chapter of Title 11 of the United States Bankruptcy Code.

**Signed on March 8, 2021**



**/s/ Daniel S. Opperman**

**Daniel S. Opperman**
**United States Bankruptcy Judge**

# EXHIBIT 6-10

{00109535.DOCX }

STATE OF MICHIGAN

52ND JUDICIAL CIRCUIT COURT (HURON COUNTY)

NORTHSTAR BANK,

        Plaintiff,

v                                       File No. 20-105695-CK

JONATHON L. RAZO,

        Defendant.

_____/

MOTION HEARING

BEFORE THE HONORABLE GERALD M. PRILL, CIRCUIT JUDGE

Bad Axe, Michigan – Thursday, November 19, 2020

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | MR. ZACHARY J. ESKAU (P68643)<br>Attorney at Law<br>175 Thompson Road<br>Suite A<br>Bad Axe, Michigan 48413<br>(989) 269-6272 |
| In Pro Per:<br>(Via Zoom) | MR. JONATHON L. RAZO<br>1720 East Morrison Road<br>Ubly, Michigan 48475 |
| RECORDED &<br>TRANSCRIBED BY: | Ms. Sarah L. McNames, CER 8624<br>Certified Electronic Recorder<br>(989) 269-7112 |

1

# TABLE OF CONTENTS

<u>WITNESSES:</u>

None

<u>EXHIBITS:</u>

None

```
 1                    Bad Axe, Michigan

 2                    Thursday, November 19, 2020 - 1:32 p.m.

 3                    THE COURT:  The matter of North --

 4                    THE DEFENDANT:  Say again?

 5                    THE COURT:  -- we are the record in the matter of

 6      Northstar Bank versus Jonathon L. Razo, file number 20-

 7      105695-CK.  This is the time and date set for motion for

 8      summary disposition.  On behalf of Northstar Bank is Attorney

 9      Zachary J. Eskau who is at the podium; and, appearing via the

10      Zoom Application, is the Defendant, Jonathon L. Razo.  Mr.

11      Eskau, you may proceed, sir.

12                    MR. ESKAU:  Good afternoon, your Honor.

13                    THE COURT:  Good afternoon.

14                    MR. ESKAU:  Zachary Eskau on behalf of Northstar

15      Bank.  Your Honor, this case is a simple loan collection

16      action and we are here today on Northstar Bank's motion for

17      summary disposition.  In this particular case, your Honor,

18      the bank and Mr. Razo entered into two promissory notes as of

19      July 7th.  The total amount due under those promissory notes

20      totals $145,095.55.  The promissory notes that have been

21      breached by failure to timely pay them; there is some

22      collateral at issue in this case, your Honor.  This has all

23      been documented with the loan documents and the security

24      documents.

25                    There is an affidavit attached to the motion from the
```

3

1    bank setting forth the proofs necessary; but, in addition,
2    your Honor, the reason summary disposition is appropriate
3    here is because there is no genuine issue of material because
4    because Mr. Razo has admitted all of the allegations.  He
5    started by --
6              THE COURT:  Well, he, sort of, did that.
7              MR. ESKAU:  -- yes.
8              THE COURT:  By virtue of the Court Rule.
9              MR. ESKAU:  Correct, and a little bit, you Honor,
10   he tacitly admitted it with his answer when he filed an
11   answer which didn't look, maybe, in the form that we would
12   normally see when someone answers, but he did submit a paper
13   which, I assume, the Court would take as an answer and he did
14   say that he wanted to start a loan re-payment plan and did
15   not, in fact, in any manner, deny the allegations in terms of
16   owing the bank money.
17        Now, he did, under the Court Rules, admit what is
18   happening here, your Honor, amid the allegations the bank
19   makes because, in the request for admit that were duly served
20   on him, he did not respond to them within the 28 days and
21   under the Court Rule at issue, your Honor, they are deemed
22   admitted.  To this date, though, I -- I don't know when Mr.
23   Razo's speaks he didn't respond to this motion.  I don't know
24   that he would deny that he owes the money to the bank.  I
25   don't want to put words in his mouth; but, as the evidence

4

1     before this Court stands, the allegation's that Comerica Bank

2     -- Comerica -- I apologize, your Honor -- that Northstar Bank

3     makes in its' --

4            THE COURT:  This is on YouTube.  So, your -- your

5     bosses may be looking at you.

6            MR. ESKAU:  I -- I -- yes, I apologize.  It stems

7     from -- it stems from the old law firm days, your Honor.

8            THE COURT:  I'll -- I'll allow it, then.

9            MR. ESKAU:  The allegations that Northstar Bank had

10    made in its' complaint have been fully admitted before the

11    Court such that there is no genuine issue of material fact

12    and judgment in favor of the Plaintiff, as a matter of law,

13    is appropriate, your Honor.

14           THE COURT:  Very well.  Thank you.  Mr. Razo, do

15    you have a response, please?

16           THE DEFENDANT:  I told Zach I would start.  You

17    know, we were supposed to get together and I was supposed to

18    -- I have a couple collateral items to give them and I was

19    gonna start making two to -- (undecipherable) -- you know, a

20    month's payments and he said that we'll be, you know, go to

21    court over it.  So -- and -- and go from there.

22           THE COURT:  Any other comment, sir?

23           THE DEFENDANT:  Nope -- or, yes, Sir.  Yes, Sir.

24    I'm willing to work him.  I mean --

25           THE COURT:  Pardon me?

```
 1              THE DEFENDANT:  -- I'm willing to work with them,
 2       yes.
 3              THE COURT:  All right.  Thank you.  Mr. Eskau,
 4       anything else, sir?
 5              MR. ESKAU:  No, your Honor.
 6              THE COURT:  Very well.  This is a motion under
 7       M.C.R. 2.116C10 and the issue that the Court has to decide is
 8       to test the factual sufficiency of the complaint to determine
 9       whether there is any genuine issue as to material fact
10       regarding the allegations contained within the complaint.
11       The evidence is considered in the light most favorable to the
12       non-moving party and the moving party has the initial burden
13       by establishing or supporting its' position, whether it be by
14       affidavit, which is attached and the Court reviewed, as well
15       as any deposition testimony, or admission, or other
16       documentary evidence, citing the *Neubacher* case, N-e-u-b-a-c-
17       h-e-r, *versus Globe Furniture*, cited at 205 Mich App 418, a
18       1994 case.
19              The party opposing the motion, then, has the burden of
20       showing by evidentiary material that a genuine issue of
21       material fact exists, citing *Coblentz*, C-o-b-l-e-n-t-z,
22       *versus City of Novi*, 2000 case, 475 Mich 558.  What is at
23       issue in this case, clearly, is an executed promissory notes
24       -- actually, two promissory notes that were entered into
25       between the Plaintiff and Defendant; and, obviously, a
```

6

1   promissory note requires that a promise is made to pay back

2   whatever may have been loaned and that, clearly, by -- by

3   virtue of reviewing the documentation, reviewing the answer,

4   reviewing the other pleadings indicates to the Court,

5   clearly, a breach of agreement by the failure to pay.

6   The Court also has to look at the answer filed by the

7   Defendant in this case and Mr. Razo says, "I would like to

8   turn over the collateral tool -- tool box and plow." "I'd

9   like to enter an affordable monthly payment plan and will

10  reach out to Zachary J. Eskau to try to come up with an

11  agreement." And that is treated as a pleading and the Court

12  has done so. That indicates to the Court that he's

13  acknowledging that there is, indeed, promissory notes and

14  there's money owing and there's collateral that he wishes to

15  turn over.

16  Also, the Court has to consider M.C.R. 2.302 and M.C.R.

17  2.312 which deals with discovery and there were requests for

18  admissions that were filed and requests for admissions asked

19  for by the Plaintiff to the Defendant and those were not

20  answered; and, pursuant to the Court Rule but not answered

21  within a specific period of time, they're deemed admitted.

22  As a result, this Court finds that there is absolutely no

23  genuine issue as to any material fact in this case; and, as a

24  result, the Court will grant summary disposition to the

25  Plaintiff in this matter. And, Mr. Eskau, do you have a

7

1    proposed order at this time?

2            MR. ESKAU: I do, your Honor.

3            THE COURT: You may approach. Thank you. Mr.

4    Razo, just to let you know what this judgment -- or this

5    order states:

6            "This matter having come before the Court on

7            Plaintiff's Northstar -- Plaintiff, Northstar

8            Bank's motion for summary disposition; the Court

9            having reviewed the allegations set forth therein;

10           heard the oral arguments of parties; and, otherwise

11           have -- otherwise, being fully advised in the

12           premises; now, therefore, it is hereby ordered that

13           Plaintiff's motion for summary disposition against

14           Defendant, Jonathon Razo is granted for the reasons

15           stated on the record; further, ordered, that the

16           judgment being hereby is granted in favor of the

17           Plaintiff, Northstar Bank and against Defendant,

18           Jonathon L. Razo in the amount of $145,095.55 as of

19           July 7, 2020 plus accruing interests, costs, and

20           attorney fees after July 7, 2020; it's further

21           ordered that interest on the judgment shall accrue

22           in accordance with M.C.L. 600.6013(7) for a written

23           instrument; it is further ordered that Northstar

24           Bank is entitled to immediate possession of all

25           collateral identified in the commercial security

8

1     agreement dated October 13, 2016 and executed by
2     Defendant, Jonathon L. Razo; it is further ordered
3     that Northstar Bank is entitled to immediate
4     possession of all collateral identified in the
5     commercial security agreement dated November 15,
6     2017 and executed by Defendant, Jonathon L. Razo;
7     it is further ordered that for purposes of M.C.R.
8     3.105, Michigan Court Rules, that is, H1B, the
9     Court finds that the value of the collateral listed
10    in the aforementioned commercial security
11    agreements to be $1,000.00 which shall be credited
12    against the judgment, again, set forth in this
13    order and judgment when delivered into Northstar
14    Bank's possession; it is so ordered this is the
15    final order and closes the case," and, as I stated,
16    I executed that on behalf of the Court in this
17    matter.
18  Based upon that, obviously, this will get filed with the
19  Clerk of the Court.  You'll be able to get a copy of this.
20  I'm assuming, Mr. Eskau --
21          MR. ESKAU:  I -- I will send a copy to Mr. Razo.
22          THE COURT:  Mr. Eskau will -- will send a copy of
23  this to you, sir; and to the extent that, Mr. Razo, you can
24  work with Mr. Eskau's office regarding how this is
25  effectuated -- it sounds like, Mr. Razo, you've been working,

9

1  you've been trying to work, and going to work, and I'm hoping

2  that continues.  Anything further on behalf of the Plaintiff?

3          MR. ESKAU:  May I just, informally, ask Mr. Razo

4  some contact information?

5          THE COURT:  Feel free.  But before we do that,

6  though, we will go off Live.

7          MR. ESKAU:  Okay.

8          THE COURT:  We'll stay on the record, but we'll go

9  off of YouTube --

10         MR. ESKAU:  Okay.

11         THE COURT:  -- so that that information is not

12 disseminated; and, it is off.  Go ahead.

13         MR. ESKAU:  Mr. Razo, what address would you like

14 me to send correspondence to?  I know you had, like, a fire

15 at your house, or something.

16         THE DEFENDANT:  Yep.  So, 1720 now -- 1720 East

17 Morrison Road, Ubly -- Ubly, Michigan 48475.

18         MR. ESKAU:  Okay.  And, I mean, do you want me to

19 have Laura from the bank call you and start working stuff

20 out?  Or, I mean --

21         THE DEFENDANT:  Yeah.  That's up to you.  I mean,

22 like I said, the tool box is in Harbor Beach, which she --

23 Laura knows exactly where it's at.  I mean, if I have to tell

24 her again, fine.

25         MR. ESKAU:  Does she --

10

```
 1              THE DEFENDANT:  Yeah.

 2              MR. ESKAU:  -- does she have your number?  What

 3      number do you want her to contact you at?

 4              THE DEFENDANT:  810 --

 5              MR. ESKAU:  Okay.

 6              THE DEFENDANT:  -- 300-5515.

 7              MR. ESKAU:  Okay.  If you -- she'll contact you, I

 8      would imagine, within the week.  If you'll get back with her

 9      because this judgment will become effective after 21 days.

10      So, if we could get something --

11              THE DEFENDANT:  That's fine.  Have her -- have her

12      text me, please.  You know, it's a lot easier for me to

13      answer a text.

14              MR. ESKAU:  Okay.  That -- okay.  We should be able

15      to get something worked out, then.

16              THE DEFENDANT:  All right.

17              MR. ESKAU:  Okay.

18              THE DEFENDANT:  Thank you.

19              MR. ESKAU:  Thank you.  Appreciate it.

20              THE COURT:  Any -- anything else by anyone?

21              MR. ESKAU:  No.  Thank you for letting me chat with

22      him.

23              THE COURT:  You're welcome.  Mr. Razo, anything

24      else, sir?

25              THE DEFENDANT:  No, Sir.
```

11

1       THE COURT:  Very well.  Wish you both the very

2  best.  We'll go off the record.

3       MR. ESKAU:  Thank you.

4       (At 1:43 p.m., proceedings concluded)

12



I certify that this transcript, consisting of 13 pages, is a complete, true, and correct transcript of the Motion Hearing and testimony taken in this case on Thursday, November 19, 2020.


Date: 06.14.2021

Sarah L. McNames, CER 8624

52nd Circuit Court

250 East Huron Avenue

Room 207

Bad Axe, Michigan 48413

(989) 269-7112

13

# EXHIBIT 6-11

{00109535.DOCX }

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF HURON

NORTHSTAR BANK,

      Plaintiff,

Case No. 20-105695- CK
Hon. Gerald M. Prill

vs.

JOHNATHON L. RAZO, an individual,

      Defendant.

FILED
SEP 4 '20 AM 10:5
LORI NEAL WONSOWIC
HURON COUNTY CLERI

_____/

Zachary J. Eskau (P68643)
175 Thompson Road
Bad Axe, MI 48413
(989) 269-6272
*zeskau@geminigroup.net*
Attorney for Plaintiff

_____/

## PLAINTIFF'S FIRST REQUESTS
## FOR ADMISSIONS TO DEFENDANT

Plaintiff, Northstar Bank, by its attorney, Zachary J. Eskau, pursuant to MCR 2.302 and 2.312, submits the following First Requests for Admissions to Defendant, to be answered in writing and under oath within twenty-eight (28) days of service of this request.

In answering these discovery requests, please furnish all information which is available to Defendant, his agents, representatives, or anyone from whom Defendant can obtain this information, including information in the possession of Defendant's attorneys, and not merely such information known of Defendant's personal knowledge. If Defendant cannot answer the following discovery requests in full after exercising due diligence to secure the information to do so, state and answer to the extent possible, specifying the reason for the inability to answer the remainder and stating whatever information or knowledge Defendant has concerning the unanswered portions.

These discovery requests are continuing and supplemental answers hereto shall be required immediately upon Defendant's receipt of further or different information, from the time the answers are served to the time of trial.

## I. DEFINITIONS

A.     As used herein, the terms "person" or "persons" include natural persons, private corporations, governmental entities, and partnerships. Singular and plural forms are used interchangeably as are the masculine and feminine forms.

B.     "Razo" or "Defendant" as used herein shall refer to Defendant, Johnathon L. Razo, and any person acting on his behalf, including, but not limited to, any of his representatives, his attorney(s), or other persons acting on behalf of the attorney(s) representing him.

C.     "Bank" as used herein shall refer to Plaintiff, Northstar Bank, and any person acting on its behalf, including, but not limited to, any of its representatives, its attorney(s), or other persons acting on behalf of the attorney(s) representing it.

D.     "Document" as used herein shall mean and include, without limitation, all writings of any kind, including the original and all identical copies, whether different from the originals by reason of any notation on such copies or otherwise (including, without limitation, correspondence, memoranda, notes, diaries, contracts, statistics, letters, telegrams, minutes, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, interoffice correspondence, authors, notations of any sort of conversation, meetings or other communications, bulletins, printed matter, computer printouts, invoices, purchase orders, worksheets, and all drafts, alterations, modifications, changes, and amendments of any of the foregoing), graphic or oral records or representations of any kind (including, without limitation, photographs, charts, graphs, videotape recordings, and motion pictures), any electronic, mechanical, or electrical records or

2

representations or any kind (including, without limitation, tapes, cassettes, discs, and recordings) in your possession and/or control or known by you to exist.

E.     "Note" as used herein shall mean the Promissory Note executed on or about October 13, 2016, by Defendant in favor of Northstar Bank, in the original principal amount of One Hundred Thousand and no/100 Dollars ($100,000.00). A copy of the Note is attached as **Exhibit A**.

F.     "Note 2" as used herein shall mean the Promissory Note executed on or about November 15, 2017, by Defendant in favor of Northstar Bank, in the original principal amount of Fifteen Thousand and no/100 Dollars ($15,000.00). A copy of Note 2 is attached as **Exhibit B**.

## II. INSTRUCTIONS

A.     In responding to these discovery requests Defendant shall furnish all information available at the time of answering, including information in the possession of its agents, and shall supplement the answers and responses in accordance with the Michigan Court Rules.

B.     If Defendant contends that any information sought by these discovery requests is exempt from discovery because it falls within the attorney-client privilege, was prepared in anticipation of litigation or preparation for trial, or is exempted by any other privilege or protection, you are to provide the following information in each such instance in lieu of setting forth the information sought:

1.     the privilege or protection which you contend applies;

2.     the form in which the information is contained (e.g., document or recollection of one or more persons);

3.     if the information is contained in a document, state the author, the recipient, and the date of the document;

3

4.      if the information is not contained in a document, state the persons involved in the communication, and the date of the communication giving rise to the privilege or protection that you claim; and

5.      the subject matter of the information that you contend is privileged or protected from discovery.

## REQUESTS FOR ADMISSIONS

1.      Admit that on or about October 13,2 016, Defendant executed the Note which is attached as **Exhibit A**.

RESPONSE:


2.      Admit that Defendant failed to pay the Note as required under its terms.

RESPONSE:


3.      Admit that Defendant is in default under the terms of the Note.

RESPONSE:


4.      Admit that Defendant has failed to pay Bank the balance due and owing under the Note.

RESPONSE:


5.      Admit that as of July 7, 2020, the balance due and owing to Bank under the Note was $129,478.43, exclusive of any costs and/or attorney fees permitted thereunder.

RESPONSE:


6.      Admit that on or about November 15, 2017, Defendant executed Note 2, attached as **Exhibit B**.

RESPONSE:


7.      Admit that Defendant failed to pay Note 2 as required under its terms.

4

RESPONSE:

8.     Admit that Defendant is in default under the terms of Note 2.

RESPONSE:

9.     Admit that Defendant has failed to pay Bank the balance due and owing under Note
2.

RESPONSE:

10.     Admit that as of July 7, 2020, the balance due and owing to Bank under Note 2 was
$15,617.12, exclusive of any costs and/or attorney fees permitted under Note 2.

RESPONSE:

11.     Admit that on or about November 15, 2017, Defendant executed the Change in
Terms Agreement attached hereto as **Exhibit C**.

RESPONSE:

12.     Admit that on or about December 6, 2018, Defendant executed the Change in Terms
Agreement attached hereto as **Exhibit D**.

RESPONSE:

13.     Admit that on or about February 26, 2019, Defendant executed the Change in Terms
Agreement attached hereto as **Exhibit E**.

RESPONSE:

14.     Admit that on or about December 6, 2018, Defendant executed the Change in Terms
Agreement attached hereto as **Exhibit F**.

RESPONSE:

15.     Admit that on or about February 26, 2019, Defendant executed the Change in Terms Agreement attached hereto as **Exhibit G**.

RESPONSE:


16.     Admit that on or about October 13, 2016, Defendant executed the Commercial Security Agreement attached hereto as **Exhibit H**.

RESPONSE:


17.     Admit that on or about November 15, 2017, Defendant executed the Commercial Security Agreement attached hereto as **Exhibit I**.

RESPONSE:


18.     Admit that the value of the collateral (as it is defined in Exhibits H and I), does not exceed the amount due and owing from Defendant to Bank.

RESPONSE:


Respectfully submitted,


By: _Zachary J. C.k_____
Zachary J. Eskau (P68643)
175 Thompson Road
Bad Axe, MI 48413
(989) 269-6272
Attorney for Plaintiff

Dated: September 2, 2020

6

{00109535.DOCX }